Hillsborough,
Feb. 1, 1927.

## GEORGE MARAVAS v. AMERICAN EQUITABLE ASSURANCE CORPORATION OF NEW YORK.

Under a policy of fire insurance the assured cannot recover for damages caused by his own negligence in failing to care for his property after the fire.

The liability of an insurer does not become fixed at the moment the fire is extinguished and the entire risk of spoilage is not thereafter cast upon the assured; but he is merely required to exercise reasonable care under the circumstances to preserve the property from future loss. The financial condition of the assured may be one of the circumstances bearing on the question of his reasonable care.

The referee clause in the New Hampshire standard fire insurance policy does not compel the parties to adopt that procedure and it is optional with the assured whether he will submit his claim to arbitration or bring an action at law to collect his damages.

A submission to arbitration requires a decision by the referees upon all the questions submitted to them, and an award which fails to decide a part of the matters covered by the submission or *a fortiori* any of the matters is void.

An insured cannot be compelled to waive his right under his policy to be compensated for a loss which may have already occurred in order to secure funds to prevent further loss to his property.

When it is shown that causes calculated to produce a certain result were in operation, it is a permissible inference that such natural result in fact followed, notwithstanding the absence of other evidence thereof.

An argument not stating an unevidenced fact but merely urging the jury to draw an inference not warranted by the evidence does not vitiate a verdict unless confirmed by the trial justice.

Nor will a verdict be vitiated by an inconsequential misstatement of the evidence amounting to no more than a departure from verbal accuracy.

An objection made by counsel to an argument without any ruling of the court thereon is unexceptionable.

Where upon objection to an argument the presiding judge gives an opportunity for counsel to withdraw the objectionable statement which he declines to do, although no ruling in terms is made by the judge, his failure to take any further notice of the matter is tantamount to a ruling that the argument should stand.

An improper statement in argument which could have no other effect than to establish a fact not in issue is harmless error; but if such fact so stated though irrelevant may have been considered by the jury in deciding another issue which was before them, a finding of harmless error is not justified.

Where a general verdict for the plaintiff is set aside on the ground that certain issues have not been litigated, the question whether those issues can be determined without a retrial of all issues is for the trial court.

ASSUMPSIT, upon a policy of fire insurance. Trial by a jury which returned three special verdicts, upon which a verdict was directed by the court in favor of the plaintiff.

The plaintiff held the defendant company's policy in the New Hampshire standard form, for the sum of three thousand dollars upon his stock in trade, which consisted principally of "Feta" cheese, so called, packed in ninety-seven large barrels and eighty small barrels, and stored in the cellar of a building in Manchester. This policy contained the following provisions:

"This policy shall be void . . . if the insured shall make any attempt to defraud the company, either before or after the loss."

. "In case difference of opinion shall arise as to the amount of any loss under this policy . : . unless the company and the insured shall, within fifteen days after notice of the loss, mutually agree upon referees to adjust the same, either party may, upon giving written notice to the other, apply to a justice of the supreme court, who shall appoint three referees, one of whom shall be thoroughly acquainted with the kind of property to be considered, and their award in writing, after proper notice and hearing, shall be final and binding on the parties."

During the night of August 21–22, 1921, two fires occurred in this building and the cellar was flooded. The plaintiff testified that for two or three days before the fire he had been at work changing the brine upon the cheese and that he had left the stoppers out of the barrels. Consequently, he claimed, dirty water found its way into the barrels. Both parties agreed that in order to meet the situation created by the fires the cheese ought to have been repacked at once in new barrels.

A few days after the fires an agent of the defendant offered the plaintiff a sum slightly in excess of the estimated cost of repacking the cheese, in full settlement of his loss. This offer the plaintiff refused. The cheese was never repacked, and, subject to defendant's exception, the plaintiff was allowed to testify that he had no money to buy barrels and other supplies necessary for this purpose. Upon September 24, the parties agreed upon an appraisal and upon October 5 the appraisers unanimously made the following report: "At this present time the cheese is of no value, the condition of which we cannot tell at this time was due to the fire or not."

At the close of the evidence the court (*Doe,* J.) made the following rulings to which the plaintiff excepted:

"(1) There is no evidence from which it can be found that the defendant caused, induced, or was responsible for, the plaintiff's failure to repack his cheese after the fire.

(2) There is no evidence from which it can be found that the

plaintiff's stock in trade, had the cheese been properly repacked after the fire, would have been of less value than it was immediately before the fire.

(3) If the financial condition of the plaintiff prevented his repacking of the cheese after the fire, that fact is immaterial on the question of the defendant's liability for the subsequent deterioration of the cheese."

Three special issues were submitted to the jury which were answered as follows: "1. Has the plaintiff made any attempt to defraud the defendant either before or since the fire? No. 2. What was the value of the plaintiff's stock in trade consisting of cheese with the kegs and brine in which it was stored immediately before the fire? $2,260. 3. What would have been the expense of properly repacking plaintiff's cheese after the fire? $416." Whereupon the court directed a verdict for the plaintiff for $416 with interest, and the plaintiff excepted.

Transferred by *Young,* J., upon the defendant's exceptions to the argument of plaintiff's counsel; and upon the plaintiff's exceptions to the denial of his motion for a directed verdict for the value of the cheese before the fire; to the rulings made by the court at the close of the evidence; to the denial of his requests for instructions; and to the order directing a verdict for the sum of $416. Further facts appear in the opinion.

*James A. Broderick* and *Warren Howe & Wilson* (*Mr. Broderick* orally), for the plaintiff.

*Tuttle, Wyman & Starr* (*Mr. Wyman* orally), for the defendant.

BRANCH, J. During the argument of plaintiff's counsel to the jury the following proceedings took place. *Mr. Broderick* arguing: "And the value that the insurance company itself placed upon the cheese that was in that cellar on the twenty-third day of April, 1921, was three thousand dollars. *Mr. Wyman:* I except to that statement. *Mr. Broderick:* Three thousand dollars on stock-in-trade, consisting principally of cheese, while contained in two-story frame building situate at 44 Spruce Street. That is the statement of this insurance company, and they collect a premium on it at three thousand dollars. *Mr. Wyman:* The ground of my exception — *Mr. Broderick:* He may take an exception, but I don't think he ought to argue it at this time. *The Court:* Make a note of it and it may be taken up at the end of the argument. *Mr. Broderick:* That is what he paid them

$43.50 for as the premium on the value of that cheese at that time."
No further reference to this portion of the plaintiff's argument
appears in the record.

No cause for setting aside the verdict of the jury upon any of the
special issues submitted to it is to be found in the foregoing pro-
ceedings. The record above set forth clearly indicates that no ruling
as to the propriety of the argument was made by the presiding
justice. Counsel were directed to make a note of the statements
objected to and to take them up with the court after the argument.
At the conference which followed the argument no mention of the
foregoing passage was made and no ruling of the court was ever
obtained upon it. Consequently, under the rule laid down in *Tuttle*
v. *Dodge*, 80 N. H. 304, 311, no question of law was raised for con-
sideration here.

But it is unnecessary to rest the decision in this instance solely
upon the above rule. It cannot be found that when counsel used
the foregoing language he was stating a fact of which there was no
evidence. The most that can be said of this argument is that he
urged the jury to draw an unwarranted inference from the language
of the insurance policy. The law in regard to arguments of this
kind is well settled. "Whether an inference can be drawn from the
evidence is a question of law, and argument of counsel urging the
jury to draw an inference not warranted by the evidence, furnishes
no ground for setting aside the verdict" (*Potter* v. *Moody*, 79 N. H.
87, 88; *Voullgaris* v. *Gianaris*, 79 N. H. 408; *Gosselin* v. *Company*,
78 N. H. 149; *Turner* v. *Company*, 75 N. H. 521; *Mitchell* v. *Rail-
road*, 68 N. H. 96), "unless the court expressly or tacitly confirms
his erroneous view," *Lafferty* v. *Houlihan*, 81 N. H. 67, 77; *State* v.
*Ketchen*, 80 N. H. 112; *Tuttle* v. *Dodge*, 80 N. H. 304, 314; *State* v.
*Small*, 78 N. H. 525, 530. "Such an error is correctible by the court
in its charge to the jury; and it is the duty of the party against
whom the erroneous rule operates to request the court to charge in
accordance with the law; otherwise he is held to waive his objection."
*Voullgaris* v. *Gianaris*, *supra*; *Tuttle* v. *Dodge*, *supra*; *Potter* v. *Moody*,
*supra*; *Cavanaugh* v. *Railroad*, 76 N. H. 68; *Lane* v. *Manchester
Mills*, 75 N. H. 102. This rule furnished an additional reason why
defendant's counsel should have followed the direction of the court,
and called the statement in question to his attention at the end of
the argument.

Later in the course of plaintiff's argument, the following proceed-
ings took place: *Mr. Broderick*, arguing: "He was obliged as a matter

of reasonable care, to notify the company of what means he had, and I submit that if he didn't do that he would not have been doing what you or I or the average man would do under the circumstances. And so he said to the insurance company: This has got to be taken care of, and taken care of right off or it will spoil, and I can't do it, because I haven't got the money. *Mr. Wyman:* I except to that statement. *Mr. Broderick:* We must have barrels; we must have milk; we must have help; and it has got to be done right off or that cheese will spoil."

After the jury had retired, counsel for the defendant asked the court to note the following exceptions to the argument for the plaintiff: "*Mr. Wyman:* Mr. Broderick stated, and I except, that Maravas had testified that he told the insurance company that he had no means with which to take care of the cheese. My objection and exception is that there is no such evidence in the case; that the plaintiff at no time and no place testified that he ever communicated with the insurance company or its representatives the fact that he had no means to take care of the cheese. *The Court:* Do you wish to retract any of those statements Bro. Broderick? *Mr. Broderick:* No, Your Honor. *Mr. Wyman:* Please note that Mr. Broderick does not retract any of the statements excepted to by the defendant."

From the foregoing extracts from the record it clearly appears that the statement of plaintiff's counsel that the plaintiff told the insurance company that he could not take care of the cheese because he had no money was called specifically to the attention of the court after the argument. The court then gave plaintiff's counsel an opportunity to withdraw the statement, which he declined to do, and, although no ruling in terms was made by the presiding judge, his failure to take any further steps in regard to the matter was tantamount to a ruling that the argument should stand. The subsequent language of defendant's counsel sufficiently indicated his intention to save his rights by exception, and the question of the propriety and effect of this argument is, therefore, properly before us.

Taken at its face value the foregoing argument had to do only with the question of plaintiff's due care in protecting his property from further loss after the fires. This question was withdrawn from the consideration of the jury by the rulings of the trial court. An improper statement in argument which could have no other effect than to establish a fact not in issue would be a harmless error. Hence, unless it can be found that the above statement, to which exception was taken, may have affected the decision of some issue

which was actually before the jury, it furnishes no cause for setting aside any of the special verdicts. Counsel for the defendant have suggested no way in which the decision of the jury upon either of the issues submitted to them, *i. e.,* fraud and value, could have been affected by this statement, but it may be thought that it had a bearing upon the question whether the plaintiff attempted to defraud the insurance company after the fires; that the jury, although not called upon to decide the question in regard to which the statement was made, may have considered the fact stated, in deciding another issue which was before them. A finding of harmless error may not, therefore, be justified.

"A statement by counsel in argument of material facts of which there is no evidence, direct or inferential, is ordinarily reversible error, unless there is a finding that it did not render the trial unfair." *Gosselin* v. *Company, supra; Story* v. *Railroad,* 70 N. H. 364. But where an inference can properly be drawn from the evidence the conclusion may be stated as a matter of fact. *Beliveau* v. *Company,* 81 N. H. 57; *Osgood* v. *Maxwell,* 78 N. H. 35; *Gosselin* v. *Company, supra; Beckley* v. *Alexander,* 77 N. H. 255; *Lord* v. *Railway,* 74 N. H. 295.

Counsel for the plaintiff concedes that there was no direct testimony to the effect that the plaintiff told defendant's agents that he had no money, but contends that his argument was justified as an inference from other testimony in the case. The essential portions of the evidence relied upon by the plaintiff are in substance as follows: The plaintiff testified that he told the defendant's adjuster how much the new barrels would cost, how many quarts of milk, and how much labor he "would need" to repack the cheese. The adjuster corroborated this testimony and said that the plaintiff told him how much labor and how much milk "he needed." He further testified, "I told him to take care of his cheese. Q. You did not give him any details as to how he was to take care of it? A. No, except that we figured up, what he said he would need. Q. You gave him no money to take care of his cheese? A. No, but offered to. Q. $488, you offered? A. Yes, sir. . . . Q. When Maravas refused your proposition of $488 on August 27, why didn't you go at once to have the appraisal made according to the terms of the policy? A. Because I expected he was going to take care of the cheese, and accept my figure. Q. Why did you expect that when he told you he would not take it? A. Well, it was a natural thing to believe that a man, when he saw he could save his cheese, rather than have any further trouble, would accept your proposition, after he thought it over."

From this testimony it was a fair inference that when the plaintiff told the adjuster that he "needed" supplies and labor he indicated that his real need was for money to procure these things; that defendant's adjuster so understood it; that his offer of $488 was made to meet this "need"; and that in following his subsequent policy of delay the adjuster relied upon this "need" to furnish the pressure which he expected would force the plaintiff to accept his offer of settlement. Under these circumstances if counsel had argued that the plaintiff made it clear to the defendant that he had no money or that he told the defendant in effect that he had no money, or that he indicated by what he said that such was the fact, the argument would have been unexceptionable. It would come perilously near hair-splitting to hold that the special verdict upon the issue of fraud must be set aside because instead of using this or similar language counsel asserted that the plaintiff said he had no money. The substance of the statement, namely, that he brought his financial condition to the attention of the defendant, was justified as an inference from the foregoing testimony. So far as the form was objectionable, it amounted to no more than a "departure from verbal accuracy." *State* v. *Foster*, 80 N. H. 1, 6. "Whatever error was made by counsel in this respect seems to have been an inconsequential one." *Lariviere* v. *Stratton*, 81 N. H. 17, 22.

Plaintiff's exception to the denial of his motion for a directed verdict for the value of the cheese before the fires must also be overruled. It was the position of the defendant throughout the trial that the final destruction of the cheese was not due to the effect of the fires but to the negligence of the plaintiff in failing to care for it after the fires. If this fact were established the plaintiff could not recover for the damage thus caused. *Levi* v. *Insurance Co.*, 75 N. H. 551. But the question of plaintiff's conduct was not submitted to the jury and has never been determined. Consequently, the plaintiff is in no position at this time to claim judgment for the full value of the cheese.

There was error, however, in the various rulings of the trial court which had the effect of withdrawing from the jury the question of the defendant's liability for the final loss of the cheese.

In the first place, the court erred in his ruling made at the close of the evidence that "there is no evidence from which it can be found that the plaintiff's stock in trade, had the cheese been properly repacked after the fire, would have been of less value than it was immediately before the fire." This ruling was apparently based upon the testimony of an expert called by the plaintiff, upon cross-

examination, that he could not tell without opening the barrels whether any water or dirt got into them or whether the cheese was damaged and that "on the probabilities if you attended to it right away . . . the difference between the value of the cheese just before the fire and the value after the fire . . . would be just the labor if it was in good condition." This is the only testimony called to our attention by the defendant to justify the ruling of the court. Yet, the same expert testified on direct examination that dirty water will spoil soft cheese; that it depends upon what kind of water gets in and how long it stays in; and there was evidence from which it might be found that dirty water did, in fact, get into the barrels and remained there for a considerable time before it could reasonably have been removed.

The plaintiff testified not only that the stoppers were out of the barrels at the time of the fires but that he found water on top of the barrels the next day. From this testimony it is not illogical or difficult to conclude that some of the water ran through the open bung holes into the barrels. When it is shown that causes calculated to produce a certain result were in operation at a given time, it is a permissible inference that the natural result in fact followed, *Boucher v. Larochelle*, 74 N. H. 433, and the fact that the inference was not verified by actual examination or inspection after the occurrence merely goes to the weight of the evidence without affecting its logical sufficiency as a basis of reasoning.

If the barrels had been opened and an examination of the cheese made immediately after the fires the question whether it had been damaged by water might have been more positively determined, but the defendant had as much right to make such examination as the plaintiff, and it cannot now complain if in the absence of such examination the question is determined upon other competent evidence. The fact of the matter seems to be that neither party was anxious to determine the exact condition of the cheese immediately after the fires. Apparently both parties were trying to take advantage of the uncertainty as to the extent of the damage to the cheese to drive a sharp bargain with the other. Each apparently feared that a test might destroy his principal talking point and hence neither moved in the matter until too late. Possibly in arguing its case to a jury the defendant might gain some benefit from this course of conduct, which made it impossible to demonstrate what the actual condition of the cheese was, but the plaintiff's right to have a jury pass upon the question was not affected thereby.

The defendant, arguing that the plaintiff produced no evidence to show that "anything deleterious got into the barrels at the time of the fire," says: "Plaintiff's whole case comes to no more than this — that the stoppers are claimed to have been out of the barrels and that water of some kind may have got into the barrels. But it is entirely speculative as to whether or not anything got into the barrels that resulted in spoiled cheese on October 5." The implication from this argument that the water which got into the plaintiff's barrels may have been clean and therefore harmless can hardly be taken seriously. The idea that water which finds its way to the cellar of a building after being used to extinguish a fire on the floors above may be clean water is wholly contrary to human experience and common knowledge.

The earliest time suggested by the defendant at which the plaintiff might surely have been in a position to repack the cheese was when the defendant's agent offered to pay in settlement of the loss the cost of repacking. The case finds that a "few days," which on the testimony might be found to be five days, elapsed before this offer was made and the effect of soaking cheese in dirty water for this period of time was evidently problematical. The plaintiff's attitude from the beginning was that he could not be sure about the effect of the water and his endeavor was to get the insurance company to advance the cost of repacking and leave the question of other damage to be determined when the actual condition of the cheese was ascertained. This was not an unreasonable position for the plaintiff to take. It does not appear that he ever admitted, either before or during the trial, that the cost of repacking would cover his loss. The question of probabilities was for the jury and they were not bound to accept the opinion of the expert above quoted.

The defendant moved that the jury be instructed that "the plaintiff is concluded by the appraisal which finally determines the fact that October 5, 1921, and thereafter, and now in this case, it is impossible to determine that any damage was done to the cheese by fire," and defendant now insists that the report of the appraisers above set forth had this effect. This contention cannot be sustained. The referee clause in the New Hampshire standard form of fire insurance policy does not conflict with the statute law of the state, and "provides a method by which the parties may have the amount of loss under a policy determined by referees." *Salganik* v. *Insurance Co.*, 80 N. H. 450, 454. The parties are not compelled to adopt this procedure, and it is optional with the insured whether he will sub-

mit his claim to arbitration or bring an action at law to collect his damages under the fire insurance statute. P. S., c. 170; P. L., c. 276; *Franklin* v. *Insurance Co.*, 70 N. H. 251. But if the parties agree to a reference they are bound by a proper award. *Salganik* v. *Insurance Co.*, *supra*. A submission to arbitration, however, requires a decision by the referees upon all the questions submitted to them, and an award which fails to decide a part of the matters covered by the submission is void. *Davis* v. *Dyer*, 54 N. H. 146; *Whitcher* v. *Whitcher*, 49 N. H. 176; *Tudor* v. *Scovell*, 20 N. H. 174; *Varney* v. *Brewster*, 14 N. H. 49; 5 C. J. *p.* 143. *A fortiori* an award like the one under consideration which wholly fails to decide any of the questions submitted to the appraisers is nugatory. The plaintiff had a right to have his case tried by a tribunal capable of ascertaining the facts. The question whether repacking would have preserved or restored the full value of the cheese should have been submitted to the jury.

Even if the correctness of the above ruling were conceded there was error in the court's order which had the effect of limiting the plaintiff's recovery to the cost of repacking. The conditions which made repacking necessary resulted from the fires. The cheese was not repacked and became a total loss. This loss might, therefore, be found to be a consequential result of the damage caused directly by the fires for which the defendant would be liable unless it appeared that the loss was due to the fault of the plaintiff. It is not the law that the liability of the insurer becomes fixed the moment that the fire is extinguished or that the entire risk of spoilage is thereafter cast upon the owner. The law merely requires that the owner exercise reasonable care under the circumstances to preserve his property from future loss. As tending to explain his failure to repack the cheese, the plaintiff was permitted, subject to the defendant's exception, to introduce evidence that he had no money to buy the necessary materials, but the court, at the close of the testimony, ruled that "If the financial condition of the plaintiff prevented his repacking of the cheese after the fire, that fact is immaterial on the question of defendant's liability for the subsequent deterioration of the cheese." This ruling was clearly erroneous. The plaintiff's financial condition was one of the circumstances in the light of which his conduct must be judged. This is not the first time that valuable property has been lost because the owner did not have sufficient capital to protect it, and financial weakness is by no means the equivalent of negligence.

Nor did the fact of plaintiff's financial weakness become imma-

terial because of the defendant's offer to pay him the cost of repacking. As stated above, the plaintiff never conceded that the cheese was not otherwise damaged. While constantly urging that it should be repacked he, at the same time, indicated his perception of the possibility that it might have suffered other damage. The defendant's offer, based upon the estimated cost of repacking, contemplated a full settlement of all the plaintiff's claims under his policy. The plaintiff testified "I asked him if it was for the salt and milk and the barrels and he said, 'no, for everything.' I wouldn't accept it." In other words, in order to obtain from the defendant the money necessary to repack the cheese the plaintiff would have had to forego his right to claim additional damages under his policy. There is, certainly, no rule of law which would compel the plaintiff to waive his right, under the policy, to be compensated for a loss which might already have occurred in order to secure funds to prevent further loss to his property.

The foregoing discussion indicates the proper disposition of the case as at present presented:

1. No reason for setting aside the special verdicts upon the issues of fraud and value is disclosed by the record, and if the plaintiff so elects he is entitled to judgment upon the verdict for $416 with interest heretofore entered.

2. Unless the plaintiff so elects there must be a new trial. Whether there can be a fair trial of the questions which have not been litigated without a retrial of all issues is a question of fact for the trial court to pass upon. *West* v. *Railroad,* 81 N. H. 522, 533.

*Defendant's exceptions overruled: plaintiff's exceptions sustained in part: new trial, nisi.*

All concurred.