Hillsborough, }
Nov. 2, 1937. }

ALBERT J. EMERY & a.

*v.*

TILO ROOFING COMPANY, INC.

*Robert W. Upton* and *Laurence I. Duncan (Mr. Duncan* orally), for the plaintiffs.

*James A. Broderick (Mr. Maurice A. Broderick* orally), for the defendant.

BRANCH, J. There was evidence tending to prove the following facts:

Upon August 23, 1934, the plaintiffs, Albert J. and Belle Emery, entered into a written contract with the defendant for the re-roofing of certain buildings in the town of Milford, of which they were the tenants in common. The contract contemplated the laying of composition shingles over the old wooden shingles then in place. The old shingles were at this time in a very dry and highly inflammable condition. Work under this contract was commenced by two of the defendant's servants upon Monday, May 7, 1934, on the north side of the main house. Upon Tuesday, May 8, shortly after 10 o'clock in the morning, a fire broke out within a few feet of the ridge pole

on the south side of the house. The defendant's servants were then working about five feet from the ridge pole on the north side of the roof. There was evidence that these men were seen smoking cigarettes on the roof before the fire was discovered and that a cigarette stub on such a roof would be a sufficient cause of the fire. There was no direct evidence to prove that the fire was, in fact, caused by a cigarette stub.

In support of its motion for a nonsuit, the defendant argues that "there is no evidence in the case that a cigarette stub was thrown on the roof or that a cigarette stub set the fire, or that the fire was caused by defendant's servants." Causal connection between the negligence complained of and the loss incurred must, of course, be proved. *Deschenes* v. *Railroad*, 69 N. H. 285. This does not mean, however, that physical causation must always be proved by an eye witness to the fact. As in the case of other questions of fact, a finding upon the issue of causation may be made as an inference from evidentiary facts. "When it is shown that causes calculated to produce a certain result were in operation at a given time, it is a permissible inference that the natural result in fact followed." *McDonald* v. *Elkins*, 88 N. H. 249, 252; *Maravas* v. *Assurance Corporation*, 82 N. H. 533, 540. In the present case, the circumstances under which the fire started were fully disclosed by the evidence and furnished a logical basis from which reasonable men might draw a rational conclusion as to its cause. The jury may properly have concluded that the only probable source of fire upon the roof at the time in question was to be found in the conduct of the defendant's servants. There was evidence that none of the chimneys in the plaintiffs' house were in use at the time and the attempt of the defendant at the trial to show that the fire might have been caused by defective wiring met with scant success. That the fire was caused by a cigarette stub was the most probable possibility disclosed by the evidence and we think that the jury were justified in finding it to be more probable than otherwise that the fire resulted from this cause. *Staples* v. *Railroad*, 74 N. H. 499. "It is not a case of conjecture between equal possibilities, but the ordinary determination of a conclusion from inferences supported by a balance of probabilities." *Saad* v. *Papageorge*, 82 N. H. 294. Not only was the conclusion of the jury as to the cause of the fire proper as a direct inference from the testimony but the improbability of any other explanation "as an exclusionary premise may serve to strengthen the force of the deduction." *Saad* v. *Papageorge*, *supra*, and cases cited.

The question of causation was specifically submitted to the jury under instructions which were in part as follows: "The first question for you to decide is whether or not the fire was set by the workmen in their use of cigarettes. Unless you are convinced by a fair balance of probabilities that the fire was so caused, your verdict will be for the defendant. . . . As to whether the fire was so caused, you may consider all the surrounding circumstances as disclosed by the evidence, such as the location of the fire when it was discovered, acts of the workmen, either before or after the fire, and the presence or absence of other agencies which may have caused the fire." These instructions were fully in accord with the considerations set forth above and we, therefore, conclude that there was no error in the submission of the issue of causation to the jury.

As in *Palmer* v. *Association*, 80 N. H. 68, there was evidence that the officers of the defendant knew that their workmen were accustomed to smoke when at work and that they failed to take adequate precautions "against the practice of the habit when it was liable to result in serious damage to third persons."

The claim of the defendant that the plaintiff, Belle Emery, was guilty of contributory negligence because she saw the defendant's servants smoking upon the roof before the fire and did not say anything to them, is untenable. Whether Mrs. Emery appreciated, or should have appreciated, the danger that fire might result from the smoking of cigarettes on the roof; whether due care required that a woman in her situation take the risk of provoking an altercation with the defendant's employees by protesting against their conduct and whether such protest, if made, would have been effective in preventing the fire, were questions of fact upon which reasonable men might differ. The issue of her due care was properly submitted to the jury under appropriate instructions. As a result of the foregoing conclusions, it follows that the defendant's motion for a nonsuit was properly denied.

In regard to the defence of contributory negligence, the court further charged the jury as follows: "So far as it appears in evidence, Mr. and Mrs. Emery are tenants in common, each owning an equal share in the property. There is no evidence that Mr. Emery knew of the smoking by the workmen, and even though Mrs. Emery were guilty of contributory negligence, he would be entitled to one-half of all such damage to the buildings and furnishings as were the natural consequence of the fire, plus the whole damage to his own personal property." To this instruction the defendant excepted.

If there is room for doubt as to the correctness of the rule of law underlying the above instruction (see *Warren* v. *Railway*, 70 N. H. 352, 361) the question for the purposes of this case, has now become moot. The verdict for both plaintiffs implies a finding by the jury that Mrs. Emery was not guilty of contributory negligence. Hence the question whether her negligence could be imputable to her husband is no longer material and there is no occasion to express an opinion upon it.

A builder and contractor who made an estimate of the cost of repairing the plaintiffs' buildings was called as a witness by the plaintiff. His estimate of necessary new material included an item of eight "junction boxes." Upon re-direct examination of this witness the following proceedings took place: "Q. And would it be safe to use cable and boxes which had been exposed to water to the extent that those walls had been exposed? *Mr. Broderick:* I suggest that this gentleman has shown no qualifications as an expert. . . . *The Court:* I will admit it. *Mr. Broderick:* Exception. Q. In your judgment would it have been safe to use the old outlets, and junctions and cables? A. No, sir." The question whether one possesses the requisite qualifications to testify as an expert is one of fact for the trial court, (1 Hening, N. H. Digest, 628) and the fact that a witness is permitted to give expert testimony implies a finding by the trial court that he was qualified to testify in that capacity. *Flint* v. *Company*, 73 N. H. 483, 485. There is nothing in the record tending to show that there was any error of law involved in this finding and defendant's exception to the admission of the foregoing testimony is, therefore, overruled.

Defendant's exception to the allowance of a portion of the argument of plaintiffs' counsel to the jury does not require extended consideration. It is sufficient to say that the argument was fully sustained by the evidence.

At the January, 1937, term of the Superior Court which was approximately one year after the verdict herein had been rendered, the defendant moved "that the verdict be reduced from One Thousand Four Hundred Fifty-four Dollars and Sixty-two Cents ($1454.62) to One Hundred Forty-nine Dollars and Sixty Cents ($149.60) on the ground that the jury fell into a plain mistake, for by the terms of the contract introduced by the plaintiff the defendant could not be found liable for damages done to the interior of the building and the jury could only consider the items of 'labor on roof $120' and 'labor on roof $29.60' as the damages for which the de-

fendant could be found liable." This motion, although couched in loose and inappropriate language, is to be regarded as a motion to set aside the verdict on the ground that the damages were excessive. The provision of the agreement to which the motion refers is found on the back of the contract under the heading, "Tilo Guarantee," and reads as follows: "CONDITIONS: We do not guarantee against conditions over which we have no control, as for example, damage by persons other than company employees. on roof, foreign matter thrown on roof, fire, lightning, cyclone and hail. We do not guarantee any painting or repairing. Metal work is never guaranteed. The owner, partial owner, or lessee agrees that we shall not be liable for any interior damage." Without intimating that this motion was otherwise meritorious, we need only say that the defendant thus sought to take advantage of a defence which was waived by its conduct at the trial. No objection was made to the evidence of the plaintiff describing the entire damage to the house nor was any exception taken to the charge of the court which directed the jury to award "such damages as were the natural consequences of the fire." It is well settled in this state that a verdict will not be set aside upon a point disclosed by the evidence but not raised at the trial. *State* v. *Rye*, 35 N. H. 368, 381; *Larkin* v. *Alley*, 86 N. H. 385.

At the trial the Presiding Justice ruled that the question of interest should not be submitted to the jury and without objection reserved the question for later consideration. Thereafter the court entered an order, subject to the defendant's exception, allowing interest upon the amount of the verdict from May 8, 1934, the date upon which the fire occurred, to the date upon which the verdict was rendered. The rule laid down in *Thompson* v. *Railroad*, 58 N. H. 524, justified the making of this order. The right to interest in a tort case was there said "to depend upon the cause of the delay" in payment. We think, however, that the rule of the *Thompson* case is too narrow.

Although it is often stated as a general rule that "interest is not allowed on unliquidated damages or demands" (8 R. C. L. Tit: Damages, s. 86) the departures from this rule have been so numerous that it cannot safely be employed as a rule of thumb for the decision of litigated cases. See note entitled "Interest on the Amount of Damage" in 96 A. L. R. 18. So far as the rule survives today, it must be subordinated in its operation to the more fundamental principle that damages in a given case should give full compensation for the loss sustained. *Jacobs* v. *United States*, 290 U. S. 13. Where

property has been wrongfully taken, detained, destroyed or damaged and the owner thereby deprived of its use, full compensation may often require that judgment be given for an amount sufficient to put the owner in as good a position as he would occupy if payment had been made contemporaneously with the loss. *Phelps* v. *United States*, 274 U. S. 341. The addition of interest from the date of the loss to the ascertained value of the property in question is a fair way of approximating this result. This appears to be the sound basis upon which rest the numerous cases collected in the note above mentioned, which fully sustain the conclusion of the author that the general rule now is "that for injury to or detention, loss or destruction of property, interest may be recovered either *eo nomine* on the damages found, or as a part of the damages." 96 A. L. R. 19. We, therefore, conclude that the allowance of interest in this case was proper.

*Exceptions overruled.*

All concurred.