Hillsborough, June 25, 1941. } No. 3254.

ARTHUR ROUSSEAU, *by his father and next friend*

*v.*

PUBLIC SERVICE CO. OF NEW HAMPSHIRE.

*Chretien & Craig,* for the plaintiff.

*Demond, Sulloway, Piper & Jones (Mr. Piper* orally), for the defendant.

448

MARBLE, J. Counsel for the defendant contend that the duty to repair any portion of the highway injured by the operation of the defendant's railway (P. L., c. 254, s. 17) was a duty which the defendant owed only to the city of Manchester and that the case was tried on the erroneous theory that the plaintiff was entitled to recover if the defendant failed in this duty and such failure occasioned the accident. The correctness of this contention need not be determined.

Without seeking a new trial but relying solely on the motions for a nonsuit and directed verdict, counsel suggest that the obligation of the defendant to highway travelers is defined by the provisions of section 21 of chapter 255 of the Public Laws imposing liability for negligence "in the construction, management or use of its tracks," and argue that the evidence is insufficient to sustain a finding that the hole in question was in any degree caused by the negligence of the defendant. If there is sufficient evidence for the consideration of the jury on the issue of negligence, the liability of the defendant appears to be conceded.

On the undisputed evidence it is clear that the condition of the defendant's track at the place of the accident was such as to constitute a menace to travelers on the highway. Photographs of the locality disclose deep depressions running along each side of the track and leaving the rails widely exposed. Several of the photographs reveal a diagonal crack in the macadam beginning at the edge of the hole into which the plaintiff ran and extending across the intervening space to the opposite rail. The remaining portions of the highway are shown to be in relatively good condition.

The cars in use on Somerville Street were 36 feet long, their weight was 17 tons, and they ran on a 20-minute schedule. It could be found that they swayed at times and "bounced" up and down "more or less." If it is not a matter of common knowledge that the flanges on the wheels of swaying and bouncing cars tend to break the edges of the surrounding pavement, it is at least a fair inference that, whatever the original cause of the breaking up of the macadam in the present case, the continuous operation of the cars day in and day out, year after year, would deepen and extend depressions once formed and thereby increase the hazard.

The superintendent of the defendant's railway department, on being asked if the operation of the cars had a tendency to destroy any part of the highway within the immediate vicinity of the tracks at any time, did not categorically deny the existence of such a tend-

ency, but merely answered, "I don't recall of any. . . . I don't remember at any time." He was then asked if it was his contention that no damage was done to the macadam by the street cars, and he answered, "Oh, no." He further declared that he didn't recall that his company had "made any repairs on Somerville Street within the vicinity of the car track" during the preceding nine years. The only witness called by the defendant was a man who had lived close to Somerville Street for over twenty years and was accustomed to pass along that street to and from his work. He testified in effect that he had never seen "anyone connected with the Street Railway" working on the ties on that street "in the last ten years."

That the defendant's inspection of the track was superficial is indicated by the superintendent's testimony that, although it was his custom to inspect the car tracks two or three times each week, he didn't remember seeing any "holes or depressions" in the vicinity of the tracks on Somerville Street in April, 1939.

On the other hand, one of the plaintiff's witnesses testified that the car tracks "were in very, very bad shape," that it "would be awful there in the spring," and that this condition had existed "for the last four or five years." He said: "They [the tracks] were very, very bad. There were big holes, and they were rutty on both sides of the track for a distance of about 18 inches." He stated that the rest of the highway "was in fair shape." The photographs substantiate his testimony.

The fact that the area of broken macadam was confined to the surface immediately above the ties, taken in connection with evidence of superficial inspection and long use of the track without repair, would authorize a finding that the hole which occasioned the accident was due in part at least to the instability of the ties or roadbed. *Saad* v. *Papageorge*, 82 N. H. 294, 296; *Watkins* v. *Railroad*, 83 N. H. 10, 12; *Emery* v. *Company*, 89 N. H. 165, 167. It could also be found on all the evidence that the defendant knew or ought to have known what the real situation was, and that the "use of its tracks" (P. L., c. 255, s. 21) under the conditions disclosed constituted negligence.

No claim is made that the plaintiff at the time of the accident was not in the exercise of reasonable care.

*Judgment on the verdict.*

All concurred.