Strafford,
No. 6151.

ALBERT MARCOTTE

*v.*

PEIRCE CONSTRUCTION CO., INC.

PEIRCE CONSTRUCTION CO., INC.

*v.*

PHILIP RENZI & SONS, INC.

June 30, 1971.

*Ovilla J. Gregoire* and *Upton, Sanders & Upton* ( *Mr. J. Gilbert Upton* orally ) for Albert Marcotte.

*Calderwood, Silverman & Ouellette* ( *Mr. Raymond R. Ouellette* orally ) for Peirce Construction Co., Inc.

*Sulloway, Hollis, Godfrey & Soden* and *Martin L. Gross* ( *Mr. Gross* orally ) for Philip Renzi & Sons, Inc.

DUNCAN, J. The plaintiff Albert Marcotte was seriously injured when he suffered electrical burns on October 24, 1963 at Pease Air Force Base in Newington, while working in the employ of a roofing subcontractor on the roof of an electrical substation. The defendant Peirce Construction Co., Inc. was prime contractor, under a contract with the United States to enlarge the station upon which Marcotte was working. Following suit by Marcotte against Peirce Construction Co., the latter brought a third party action against Philip Renzi & Sons, Inc., its electrical subcontractor, seeking indemnity against Marcotte's claim, alleging both an implied contract to indemnify Peirce and an independent tort on the part of Renzi.

The actions were tried by jury before *Flynn*, J. with a companion action brought by Marcotte against Renzi & Sons. At the close of Peirce Construction's evidence, and subject to its exception, the trial court directed a nonsuit on the contract count of its action against Renzi & Sons. The actions brought by Marcotte against Peirce Construction and against Renzi & Sons were submitted to the jury, but the third party action of Peirce Construction against Renzi & Sons was withheld pending verdicts in the submitted cases. The jury returned a verdict against Peirce Construction and a verdict in favor of the defendant Renzi & Sons. The trial court then directed a verdict for the defendant Renzi & Sons on the remaining count of the Peirce Construction action alleging an independent tort by Renzi & Sons entitling Peirce Construction to indemnity.

The questions of law presented by the exceptions of Peirce to rulings made in the course of the trial, including direction of a verdict for the defendant in Peirce against Renzi; and to the denial of its motions to set aside both verdicts of the jury, were reserved and transferred by the presiding justice.

When the accident occurred, Peirce was engaged in enlarging a one-story substation which originally was approximately thirty-six feet long and eight feet wide, by adding several feet to both the east and west sides of the structure the length of which ran north and south. The building had a metal roof, and Marcotte's work consisted of bonding the joints between the new sections of the roof and the old. Power for the substation came from overhead lines carrying voltage of 13,800 RMS through three busses located at

the northwest corner of the old original roof, entering the substation through three insulators placed in a triangular pattern, eighteen inches apart, with the apex toward the east side. The busses, which were uninsulated above the nine inch insulators at the roof level, projected vertically for a foot and a half, extended easterly at a $45°$ angle for three feet to a point six feet above roof level, and then proceeded vertically to a superstructure above.

It was Peirce's claim that it had inquired of Renzi whether or not any protective devices could be installed about the busses, to protect workmen, and was advised that no adequate devices were available. *See Corson* v. *Liberty Mut. Ins. Co.,* 110 N.H. 210, 265 A.2d 315 ( 1970 ). In any event no such protection was provided.

The plaintiff Marcotte was twenty years of age and had been first employed by Pawnell Bros. Roofing Co., Inc. following completion of his high school education in Dover in 1962. He commenced work on the substation roof on October 23, 1963. He completed his work on October 24. He testified that he then talked with the Peirce foreman, who was kneeling on the roof near the busses at the northwest corner. As he was about to leave, he walked past the busses in a southeasterly direction. As they disappeared from his peripheral vision, he removed his cap, wiped perspiration from his forehead with his left hand, dropped his hand to his side, and was struck on the hand by current emanating from the nearby busses. Marcotte and other workmen had been warned that contact with the uninsulated busses would be fatal.

A major issue at the trial was whether Marcotte negligently touched one of the busses as he walked past them, or whether the electricity had arced a sufficient distance to cause the burns suffered, without actual physical contact.

As a part of plaintiff Marcotte's evidence, he offered the expert testimony of the witness Link. After direct and cross-examination with respect to the witness's qualifications, and subject to Peirce's objection and exception, the court found that the witness was qualified, and that he might " be of some assistance to the jury. " The witness was a mechanical engineer in the employ of Raytheon Company. His formal education in the 1930's at the Pennsylvania Maritime Academy, had been followed by three years of postgraduate work in physics at Bowdoin College. After service on shipboard in the Navy he had engaged in work for aviation companies where he encountered voltages up to 20,000 volts; and

he was later associated in a company which built "high voltage power supplies for Westinghouse," involving 30,000 volts. Following a period of "missile work" he had been employed between 1953 and the date of trial by Raytheon, installing radar installations and serving as "design engineer, on electromechanical elements mostly."

It was the testimony of the witness that current carried by the three-phase system on the roof of the Pease substation was capable of arcing a distance of three inches in dry air; and that if drops of perspiration were present in the air to act as conductors of the electricity, the arcing could progress by three-inch intervals to "several multiples of three inches, six inches, nine inches if they were spaced properly. This is a thing no one would know."

We find no error in the court's finding that the witness Link was qualified to testify concerning the properties of electricity, and the arcing potential of the busses involved in this case. The fact that his schooling had been in mechanical rather than electrical engineering, and that he "had no background in electrical power substations" as the defendant points out, is not conclusive of a lack of qualification. The issue for the trial court was whether "by either study or experience" he had knowledge . . . so superior to that of men in general " that his views would " probably assist the triers of the fact." *Dowling* v. *Shattuck*, 91 N.H. 234, 236, 17 A.2d 529, 532 ( 1941 ). As was observed in *Bratt* v. *Western Air Lines*, 155 F.2d 850, 853 ( 10th Cir. 1946 ): "There is no precise requirement as to the mode in which requisite skill or experience shall have been acquired." The court did not err in permitting the jury to hear the testimony. *See* 2 Wigmore, Evidence *s.* 660 ( 3d ed. 1940 ). *See also Hill* v. *Carolina Power & Light Co.,* 204 S.C. 83, 106-08, 28 S.E.2d 545, 553-54 ( 1943 ).

The defendant attacks the competence of the witness's testimony on the ground that the evidence of the presence of droplets of perspiration between the plaintiff and the busses was so speculative and conjectural as to make the expert's testimony inadmissible. The evidence tending to show that arcing occurred, as Link testified that it could have, came primarily from the plaintiff Marcotte, who testified that he flicked or shook his sweaty hand a little after he lowered it from his forehead to his side. The probability that his burns resulted from arcing was supported by his positive testimony that he did not touch the busses, and by evidence that the burn on his hand was not consistent with his having done so, but was indicative rather of a burn due to arcing.

There was also evidence that the "cracking" noise which accompanied the injury was characteristic of arcing, rather than contact with the busses which would have produced a "sizzling" noise. The conclusion that the injury resulted from arcing rather than contact with the busses was not an impermissible inference, nor was the conclusion that it occurred by reason of the presence of perspiration in the air. *L'Esperance* v. *Sherburne*, 85 N.H. 103, 114, 115 A. 203, 209 ( 1931 ). *See also Maravas* v. *Corporation*, 82 N.H. 533, 540, 136 A. 364, 369 ( 1927 ).

The evidence permitted a finding that "the most probable possibility disclosed by the evidence" was that the plaintiff's burns probably resulted from current transmitted by arcing through the humid air laden with the plaintiff's perspiration. *Emery* v. *Company*, 89 N.H. 165, 167, 195 A. 409, 411 ( 1937 ). *See also Fitzpatrick* v. *Company*, 101 N.H. 35, 38-41, 131 A.2d 634, 637-40 ( 1957 ); *Hill* v. *Carolina Power & Light Co.*, 204 S.C. 83, 92, 93, 28 S.E.2d 545, 547 ( 1943 ).

The risk of injury by reason of proximity to high voltage, without contact, was shown to have prompted a practice by utilities of instructing workmen to keep a distance of at least two feet from a 15,000 volt current; and instances of injuries from arcing over greater distances than those relied upon in this case are not strangers to the reported cases. *Hill* v. *Carolina Power & Light Co. supra; Cooper* v. *Heintz Mfg. Co.*, 385 Pa. 296, 301, 122 A.2d 699, 701-02 ( 1956 ); *Dunn* v. *Cavanaugh*, 185 F. 451 ( 2d Cir. 1911 ). *See also* Curtis, Law of Electricity 771 ( 1915 ); *Barrett* v. *Foster Grant Co.*, 321 F. Supp. 784, 787 ( D.N.H. 1970 ).

The exceptions relating to the qualifications and testimony of the witness Link are overruled.

The action of Marcotte against Renzi was submitted to the jury with instructions in the language of *s.* 311 ( 1 ) ( b ) of Restatement ( Second ) of Torts ( 1965 ) as follows: "One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results to such third persons as [ one ] should expect to be put in peril by the action taken. " This instruction was followed by others based upon *s.* 311 ( 2 ), and comment *d* in paraphrase, and concluded: "The defendant Renzi was under the duty to exercise reasonable care in advising Peirce Construction if Peirce so requested, of the availability of protective insulating devices which if placed upon high

voltage lines or busses as we have here would have prevented the injuries plaintiff sustained."

The jury was further told: "Now if the defendant Renzi negligently in this respect caused or contributed to cause Mr. Marcotte's injuries you will return a verdict for Mr. Marcotte against Renzi unless you find that Mr. Marcotte was guilty of contributory negligence causing or contributing to cause his injuries." Other instructions properly advised the jury concerning the issues of neligence, contributory negligence, and causation as applied to both cases submitted.

Thus the verdicts returned by the jury established findings by the jury that Marcotte was free from causal contributory negligence, and that Renzi was not guilty of negligence which caused the injuries, but that Peirce was.

Subject to Peirce's exception, a directed verdict was ordered as to the second count of its action against Renzi, at the close of the defendant Renzi's evidence. This count was based upon contract to "render an opinion as to the feasibility" of providing protective barriers, or covering, for the exposed wires, and the rendering of such an opinion by Renzi's employee Fontneau. As to this count the directed verdict was clearly warranted. Renzi's written subcontract with Peirce related solely to work to be done within the substation building. As to any other undertaking or representation apart from the written subcontract, the evidence was in conflict. No claim was made of any written contract with respect to protective devices for the wiring on the roof. There was testimony that Fontneau had reported to Peirce that no devices were available which would effectively protect against the voltage involved. Fontneau himself denied having so advised Peirce. There was other testimony from which it could be found that any such advice which may have reached Peirce came from sources not attributable to Renzi. Considered in its entirety, the evidence did not warrant a finding of a contract, either express or implied, that Renzi would furnish advice upon the subject. Cf. *Wentworth Hotel* v. *Gray, Inc.*, 110 N.H. 458, 272 A.2d 583 ( 1970 ).

The issue presented by the count of the Peirce action alleging a right to indemnity because of negligent misrepresentation by Renzi to Peirce, was implicit in the issue of Renzi's liability to Marcotte as submitted to the jury under the instructions based upon *s.* 311 of Restatement ( Second ) of Torts ( 1965 ). *Gerrish* v. *Whitfield,* 72 N.H. 222, 55 A. 551 ( 1903 ). The verdict in Renzi's favor necessarily determined that no negligence on its part caused or

contributed to cause Marcotte's injury. This being so, no occasion remained after the verdicts to submit to the jury the issue of whether Renzi had breached any independent duty to Peirce to ex- ercise care in advising it which could result in its liability to Marcotte, requiring indemnification by Renzi.

Moreover, the jury's finding of causal negligence on the part of Peirce served to operate as a bar to Peirce's claim for indemnity, since the burden of establishing its freedom from contributory negligence in its action against Renzi rested upon it as plaintiff. *Garapedian, Inc.* v. *Anderson*, 92 N.H. 390, 395, 31 A.2d 371, 373-74 ( 1943 ). It follows that the trial court properly directed a verdict for Renzi on the remaining count of Peirce's indemnity action, and Peirce's exception is overruled.

*Exceptions overruled; judgment on the verdicts.*

All concurred.