Hillsborough
No. 6782

HENRY A. CHANAKI

v.

BYRON E. WALKER, a.k.a.
WALKER'S RIDING STABLE

October 31, 1974

*Green, Sullivan & Green (Mr. Leonard S. Green* orally) for the plaintiff.

*Shaw & Eldredge* and *Joseph A. Lowther (Mr. Robert Shaw* orally) for the defendant.

DUNCAN, J. By this action the plaintiff seeks damages for personal injuries sustained by him on July 19, 1970, in Fremont, when a horse which had been hired from the defendant reared while the plaintiff was riding him and fell upon the plaintiff. A trial by jury resulted in a verdict for the plaintiff. The defendant's exceptions to the denial of his motions for nonsuit, a directed verdict, and to set aside the verdict were transferred by the Presiding Justice *(Flynn,* J.).

The only issue presented is whether there was evidence which warranted a finding that the plaintiff's injuries resulted from the defendant's negligence. In passing upon motions for nonsuit and directed verdict the court is "obliged to consider the evidence for the plaintiff as true" (*Leonard v. Manchester,* 96 N.H. 115, 117, 70 A.2d 915, 917 (1950)), and to determine whether "construed most favorably to the plaintiff, [it] would permit a jury to find in [his] favor." *Muzzey v. Rockingham County Trust Co.,* 113 N.H. 520, 521, 309 A.2d 893, 894 (1973).

The plaintiff, an adult accompanied by three minor children, two of whom were 11 years of age and one was 9, hired horses at the defendant's stable and set out upon a trail ride through woods on the defendant's property. The only witnesses to testify were the plaintiff and the defendant's son. The plaintiff's evidence indicated that when the horses were furnished, the plaintiff acknowledged to the defendant's agents that he "had been on a horse before", but no inquiry was made into his competency or the experience of the youngsters with him. At the trial the plaintiff testified that he had not "ridden a horse in seven to eight years" and that none of the children to his knowledge had had any experience whatever.

The riding party was led by the defendant's 15-year old son. It proceeded over a woods trail at a slow pace until a logging road was reached. The evidence as to what occurred thereafter was in conflict because the defendant's son testified that he was not present when the plaintiff was injured but that he had gone to the rear after the fifth horse which

had turned back on the trail. Accepting the plaintiff's testimony as true, it could be found that the son, who was leading the party, inquired at the logging road if the group wanted to run the horses back to the stable. The plaintiff responded in the negative because he didn't know the horses and didn't know "just what they would do when they started to run". The leader nevertheless started to run, and according to his own testimony "cantered or loped" for about 200 feet. The plaintiff's horse, which was third in the line of five, thereupon "acted up" by rearing three times. On the third time, the plaintiff undertook to dismount by sliding off the horse and "the horse just sat down on [the plaintiff's] leg".

It is not disputed that the defendant owed a duty to the plaintiff to exercise reasonable care for his safety. *Christian v. Elden,* 107 N.H. 229, 233, 221 A.2d 784, 788 (1966); *Stevens v. Bow Mills Methodist Church,* 111 N.H. 340, 283 A.2d 488 (1971); *see* W. Prosser, Torts § 61, at 392-93 (4th ed. 1971). The jury could reasonably find that the defendant's agent was negligent, either because of his abandonment of the inexperienced group by loping on ahead and leaving the party with unfamiliar horses, or because of his disregard of the plaintiff's request not to break into a run. The son himself testified that he was aware that "horses sometimes do unusual things", and the jury could reasonably find that the plaintiff and his party were exposed to an unreasonable risk of harm by the son's conduct.

The plaintiff was not called upon to disprove the existence of all other possible causes of the accident, but only to make it appear "a little more probable than otherwise" that it resulted from the defendant's negligence. *Bresnahan v. Company,* 88 N.H. 273, 275, 188 A. 10, 11 (1936); *Descoteau v. Boston & Maine R.R.,* 101 N.H. 271, 275, 140 A.2d 579, 583 (1958). That the defendant's agent might have calmed the horse, or prevented the plaintiff from attempting to dismount had he remained with the party, or that the horse might not have reared in the absence of the "run", were permissible inferences from the testimony. The case of *De Pietro v. Lavigne,* 97 N.H. 474, 92 A.2d 914 (1952), requires no different conclusion, since the record in the case at bar contains no evidence of "equally probable" causes of the accident not

attributable to the defendant which would admit of speculation by the jury. *See Ahern v. Company,* 88 N.H. 287, 291, 188 A. 470, 473 (1936). The motions for nonsuit and directed verdict were properly denied.

There was no error in the trial court's denial of the motion to set aside the verdict on the grounds that it was against the law and the evidence, and the result of plain mistake. *Condiles v. Waumbec Mills,* 95 N.H. 127, 58 A.2d 726 (1948); *Powell v. Gagne,* 102 N.H. 256, 257, 154 A.2d 750, 751 (1959).

*Judgment for the plaintiff.*

All concurred.