Grafton,
No. 5266.

CARL E. WRIGHT, *Adm'r*

*v.*

CONNECTICUT VALLEY ELECTRIC CO.

Argued October 6, 1964.
Decided December 30, 1964.

114

*William F. Batchelder* and *Walter L. Murphy* (*Mr. Murphy* orally), for the plaintiff.

*Leahy & Denault* and *Albert D. Leahy, Jr.* (*Mr. Albert D. Leahy, Jr.,* orally), for the defendant.

LAMPRON, J. The essential facts are not in dispute. In 1944 the deceased, Forrest Wright, and his wife granted to a predecessor of the defendant an easement to construct a power line across their property in order to obtain electrical service. A 7,200-volt line was erected across the Wright premises. At its closest point, the line was 7' 5'' from the dwelling. The verticle distance from the ground to the wire at a point opposite the chimney, later erected on the house, was 22' 2''. When constructed in 1952, the chimney reduced the horizontal clearance of the power line to 6' 4''.

On March 3, 1963, the chimney became plugged and the decedent with his son and his son-in-law attempted to clear the obstruction by dropping heavy objects down into it. One was a "long galvanized water pipe" 13' 4'' in length. Their attempts failed. On the next day the deceased and his son-in-law planned to use this pipe to measure the depth of the obstruction from inside the chimney then they intended to place the pipe on the outside to locate the point of obstruction, knock a hole in the chimney, and remove the blockage.

On that next morning, March 4, the decedent went outside alone to work on the chimney. It had been plugged for two days during which the home had been without central heat. It

was winter weather with a great deal of snow. It was necessary to get the heating plant in operation as the deceased's mother was coming home from the hospital the following day. He was later found lying on the ground beside the chimney. The galvanized water pipe used the preceding day was a short distance away from his left hand. He was brought in the house in a state of shock and died of electrocution from contact with high voltage electricity.

At the time of the accident, the line carried 7,200 volts of electricity. The decedent had known for some time that the line carried this high voltage. When the chimney was built about eleven years previously, a staging was erected which remained in position for two years because the decedent "waited until the power went off about 4 or 5 hours before he took it down."

The defendant maintains that the plaintiff cannot recover because the decedent's action in heedlessly encountering a known danger constituted contributory negligence as a matter of law. Such conduct by the decedent would preclude recovery. *Robinson* v. *Railroad*, 85 N. H. 474, 475, 476. However it is established law that of itself "incurrence of a known danger is not the legal equivalent of negligence." *Piateck* v. *Swindell*, 84 N. H. 402, 404. There is no fault if a known danger is carefully incurred. *Williamson* v. *Company*, 89 N. H. 216, 218; *Brosor* v. *Sullivan*, 99 N. H. 305, 308.

The plaintiff is under no obligation to prove the decedent's due care. *Burelle* v. *Pienkofski*, 84 N. H. 200, 202. On the contrary RSA 507:8 imposes upon the defendant the burden of proving that the deceased was guilty of contributory negligence. *Lovett* v. *Railway*, 85 N. H. 345, 351. Defendant is not entitled to a nonsuit or a directed verdict on that issue unless the evidence compels a finding that the decedent was contributorily negligent. *Burgess* v. *Railroad*, 98 N. H. 372, 377.

If a decedent's conduct admits of any reasonable and nonculpable explanation the question of his due care is for the jury. *Doyle* v. *Company*, 93 N. H. 61, 62; *Carter* v. *Bergeron*, 102 N. H. 464, 470. During practically all of the preceding day, the deceased, his son-in-law, Kenneth Naylor, and for part of the day his son, Carl, tried to unplug the chimney. Naylor was on top of the roof of the house from where he was dropping into the chimney a bulldozer cutting blade about 3/4 of an inch thick, approximately 6 inches wide, 8 or 10 feet long,

and weighing probably 75 to 85 pounds. Naylor was also using the same 13' 4" galvanized water pipe found near the decedent "to drive the stuff down to the bottom of the chimney."

From this all day experience of which he was a part, the decedent could be found to have reasonably assumed that he could safely use this same pipe the next day on the ground or even on top of the oil drum found near his body and that he was not heedlessly encountering the known danger of the 7,200-volt wire. The question of his due care was for the jury and defendant's motions for nonsuit and a directed verdict were properly denied. *Brown* v. *Gottesman*, 103 N. H. 33, 35.

Defendant's motion for a mistrial was based on the fact that at the view plaintiff's counsel asked the jury to observe the high tension wires and pointed out that they were swaying in the wind. Defendant maintains "this remark was extremely prejudicial to the defendant's case because it planted in the minds of the members of the jury the idea that the motion in the wires and the accident were causally connected."

"The purpose of a view is the acquisition by the jury of a special and restricted kind of evidence, which, the trial court in its discretion, finds may be of use to the jury in reaching a verdict." *Carpenter* v. *Carpenter*, 78 N. H. 440, 445. The Trial Court could properly find that in pointing out to the jury the effect of the wind on the high tension wires, plaintiff's counsel was calling their attention to "objects" which could aid the jury in passing on the issue of defendant's due care in locating the wires where it did. RSA 519:21; *Chouinard* v. *Shaw*, 99 N. H. 26, 28. A finding that the trial was thereby rendered unfair was not compelled. *Davis* v. *Nees*, 100 N. H. 144, 146.

*Exceptions overruled.*

DUNCAN AND WHEELER, J.J., dissented; the others concurred.

WHEELER, J., with whom DUNCAN, J., joined, *dissenting:* I concur with the majority that evidence of the decedent's due care was not a necessary part of the plaintiff's case, and that the burden was upon the defendant to establish the decedent's contributory negligence. RSA 507:8.

However, we think the circumstances of the accident in this case "conclusively negative the possibility that the decedent

exercised any care for his own safety." *Dennis* v. *Railroad,* 94 N. H. 164, 165.

I would sustain the defendant's exception to denial of its motions for nonsuit and a directed verdict.