Public Utilities Commission,
No. 5371.

## WHITE MOUNTAIN POWER COMPANY

*v.*

## CHARLES W. WHITAKER & a.

Argued September 9, 1965.
Decided October 5, 1965.

*Hall, Zellers, Morse & Gallagher* (*Mr. Atlee F. Zellers* orally), for the plaintiff.

*Upton, Sanders & Upton* (*Mr. Frederic K. Upton* orally), for the defendants.

BLANDIN, J. In broad outline, the fundamental issue before us is whether the record supports the order and report of the Public Utilities Commission granting the plaintiff's petition for condemnation of certain lands of the defendants. The disputed order granted the plaintiff's petition for a right of way from the company's substation south of North Conway at Redstone Village to a proposed substation to be erected in the village of Glen, in the town of Bartlett, approximately eight miles farther north. The question of damages is not before us, that matter having been transferred to the Superior Court under RSA 541:21 and RSA 371:10.

The defendants' position, as stated in their brief, is: (1) "The order of the commission . . . is clearly unlawful and unreasonable because there is no necessity for locating the transmission line on the defendants' property" and (2) "because it takes from the defendants a greater amount of property than is required for the transmission line." These questions are to be determined in the light of RSA 541:13, which reads as follows:

"Upon the hearing the burden of proof shall be upon the party seeking to set aside any order or decision of the commission to show that the same is clearly unreasonable or unlawful, and all findings of the commission upon all questions of fact properly before it should be deemed to be *prima facie* lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable."

At the threshold of the inquiry, it should be noted that it is undisputed by these defendants that the 33,000-volt transmission line which the plaintiff desires to construct is necessary to meet "the reasonable requirements of service to the public" as prescribed by RSA 371:1. This is due to the fact that the demand for electricity in the area is rapidly and constantly increasing and that the present line has reached its capacity.

In regard to the defendants' first contention that it was unnecessary to take any of their property we need not detail the voluminous evidence elicited in hearings which lasted many days and during which several views of the locality were taken by the Commission. In summary, the plaintiff introduced testimony that as a result of a survey and after some four years' consideration, six possible routes were analyzed, including the alternative one proposed by the defendants. They claim this is superior to the one requested by the plaintiff which was granted in substance by the Commission. The route finally chosen by the plaintiff company was picked on the basis of evidence that it best met vital requirements from the standpoint of continuity of service, safety to the public, economy in construction and maintenance, and was the most consistent with the public interest. A witness for the company testified that "after about four years looking around this seems to be the only feasible route." The Commission, which could accept or reject such portions of the testimony as it desired (*Public Service Co.* v. *Tenneriffe Development Co.*, 104 N. H. 339), could find the following decisive facts:

The chosen route was laid out to pass easterly of North Conway and traversed completely undeveloped land of the defendants. There was no construction on this property, no buildings to be moved, and with the way cleared of trees, as the easement granted by the Commission would permit, it appeared that continuity of service and safety to the public would be well assured. The cost of purchasing the necessary rights of way and of construction and maintenance of the line would be lower than on the route proposed by the defendants. The danger to life and property by trees falling on the wires, an important consideration, would be reduced from that which would exist were the defendants' proposal to be adopted. Finally, the damage to the scenic beauty of the Conway area, which while not determinative is nevertheless to be considered (*Opinion of the Justices*, 103 N.H. 268, 270), would be less than if the defendants'

alternative route were chosen. To be sure, there was contrary testimony, especially as regards value, where it is well known that opinions may be as numerous as the stars and often, as in this case, almost as far apart. However, we have repeatedly held that these conflicts were for the Commission itself to resolve. *Plymouth Fire District* v. *Water Pollution Comm'n*, 103 N. H. 169, 173; *Goodwin* v. *Johnson*, 105 N. H. 294, 296.

To uphold the burden which they assumed of demonstrating by "a clear preponderance of the evidence" that the Commission's orders are "unjust or unreasonable" (RSA 541:13), and also to show that their proposed route was "superior" to that granted by the Commission, the defendants rely heavily on their expert, Harris F. White. No question was raised as to his qualifications, but here again the Commission could reject or accept such portions of his testimony as they saw fit. *Wujnovich* v. *Colcord*, 105 N. H. 451, 453. However, as the plaintiff points out, Mr. White spent but a single day on the project and never examined the company's proposed route from Redstone to Glen at all. He stated that he could make no comparison of the cost between the route granted by the Commission and the alternative route suggested by the defendants. He declined to testify that the defendants' route was better than the one granted by the Commission. He merely said that it was "feasible, practical," and "safe." He went on to admit that if he were to engineer the installation of the line, he would not decide on his present knowledge which route should be followed. In this state of the record, it is obvious that the Commission was not bound to accept Mr. White's views, but could properly adopt the plaintiff's proposals.

The defendants next argue that the Commission's order is erroneous because it takes from them "a greater amount of property than is required for the transmission line." Here again they rely substantially on the testimony of Mr. White (who incidentally said a 100-foot width has been standard for 33,000-volt lines) buttressed by certain exhibits, including photographs, that a 100-foot right of way is not now necessary for a 33,000-volt transmission line. They urge that modern construction permits a much narrower space to be used at less cost and with equal safety to the public. On this point there are conflicts of opinion which were for the Commission to resolve. *Plymouth Fire District* v. *Water Pollution Comm'n*, 103 N. H. 169, 173.

The defendants' proposal was for the line to go along the

railroad's right of way through the heart of the commercial, industrial and residential section of North Conway without the plaintiff acquiring any additional rights from abutting owners on whose property are trees and buildings. In some places there would be but ten feet and in one instance a bare eight feet clearance between the line and adjacent buildings. The trees, the defendants' expert admitted, might fall on the line, but he said that he believed and would "hope" the new construction would be strong enough to withstand the shock. The National Electric Safety Code calls for a minimum of 10 feet clearance from buildings. However, such minimum standards, while evidence that the new construction would meet the requirements of due care, are not decisive of whether it would do so. *Boulay* v. *Company*, 90 N. H. 402. The ultimate test in each case is what does reasonable prudence demand. See *Fitzpatrick* v. *Company*, 101 N. H. 35, 37. In the case of *Wright* v. *Connecticut Valley Electric Co.*, 106 N. H. 113, the code provided for a minimum clearance of 3 feet from buildings, and the fact that the transmission line was 7.5 feet from the house, did not free the company from liability. Considering all the circumstances, the Commission could disregard the defendants' expert's opinion and the evidence of the minimum standards of the National Electric Safety Code and draw its own conclusions from all the evidence as to what would be a safe minimum clearance. *Hood* v. *Nashua*, 91 N. H. 98, 100.

The Commission may be presumed to be familiar with the dangers arising from high winds, falling trees, and ice and snow storms in this state. On all the testimony, including the views taken by the Commission, which may have furnished a vital part of the evidence (*Gelinas* v. *Portsmouth*, 97 N. H. 248), we cannot say as a matter of law that its decision granting a 100-foot right of way through the defendants' property was clearly unreasonable or unlawful. It therefore appears that this finding cannot be set aside. *Plymouth Fire District* v. *Water Pollution Comm'n*, 103 N. H. 169.

The defendants contend that the Commission's grant to the plaintiff of a 100-foot right of way through their undeveloped lands and a 70-foot strip along the Maine Central Railroad tracks, which allowed some 50 feet clearance on one side of the transmission line and but 20 feet clearance on the other is so inconsistent that the general order must be set aside. See *Bean* v. *Quirin*, 87 N. H. 343, 350. They claim that the effect of these

inconsistent orders or findings is the same as if no findings had been made in the essential issue of the amount of property required and therefore the case must be remanded to the Commission. *Company* v. *State*, 95 N. H. 353, 360. We are unable to accept this argument. The company does not deny that it would have preferred a 100-foot easement along the entire route. However, in that section of the transmission line between the boundary of the defendants' lands and Glen, the Commission refused to grant the plaintiff an additional 30-foot strip on land adjacent to the railroad. The plaintiff desired this extra footage so that it would have a full 50 feet on either side of its poles and wires. Instead, the order provided that the line should be located not less than 29 feet from the center line of the railroad tracks and 20 feet inside the outer edge of the railroad's right of way. The result of this was, as previously stated, to give the plaintiff ample footage on the side of its line toward the tracks and 20 feet on the other side. However, the record discloses that along the railroad property, there are only seven property owners on whose land there is timber of any consequence within 30 feet of the railroad land. Of these seven, the company has procured easements 100 feet wide from four, and the Commission's order allows the company to condemn rights of way 100 feet wide from the other three.

Furthermore, to grant the extra footage through this area would jeopardize the scenic vista north of routes 16 and 202, looking toward Mt. Washington. The prospect that this might be done caused violent opposition from numerous persons and organizations interested in preserving the scenic beauty of the area. The Commission could have reasonably concluded, considering all the evidence, including the views which it took, that a 100-foot right of way was presently not necessary and in the public interest along the railroad tracks, but was necessary through the heavily timbered area of the defendants' property. We do not believe that the findings are inconsistent or that they lack sufficient clarity to furnish the court with the information necessary to determine their worth. *Cf. Company* v. *State*, 95 N. H. 353, 360. Therefore, a remand is not required for this purpose.

The final issue raised, which concerns the defendant Whitaker only, is that the Commission erred in granting the plaintiff a right to condemn a fee interest in three and one-half acres of this defendant's land, located on the Kearsarge Road, for a

substation. There was ample testimony in the record, much of which was uncontroverted, to support the ultimate need for such a substation to satisfy the burgeoning demand for electricity in the North Conway area, where the skimobile and other business enterprises are located. The present substations at Redstone, which the new substation would replace, are substantially depreciated. The Whitaker lot is ideally situated to tie in with the present distribution system and, being close to the load center, construction there would reduce cost and improve service.

It is true that such a substation may not be built for some years, but the law has been long established that property may be taken for uses which may be reasonably anticipated in the future. *Exeter & Hampton Electric Co.* v. *Harding*, 105 N. H. 317, 319. This question was thoroughly discussed in *Public Service Co.* v. *Shannon*, 105 N. H. 67, with the citation of numerous authorities, and we see no need to review it further here.

In summary, we conclude that the Commission's orders and findings, express and implied, are warranted and that the defendants have not sustained their burden of showing by "a clear preponderance of the evidence" that the decision of the Commission is "unjust or unreasonable." RSA 541:13; *Public Service Co.* v. *Shannon, supra.*

The order is

*Appeal dismissed.*

All concurred.