ALBERT A. GELINAS, JR. *vs.* NEW ENGLAND
POWER COMPANY.

Worcester.   October 9, 1970. — April 1, 1971.

Present: SPALDING, CUTTER, SPIEGEL, REARDON, & QUIRICO, JJ.

*Negligence,* Electricity. *Evidence,* Admissions and confessions, Statement
by agent, Res gestae. *Practice, Civil,* Exceptions: waiver. *Supreme
Judicial Court,* Argument. *Words,* "Ordinary prudence and care."

In an action against an electric power company for injuries sustained by
the plaintiff in the yard of a construction company while he was re-
pairing a conveyor when electric current from the defendant's live
transmission line of bare copper wires overhead went through the con-
veyor eleven feet below and rendered the plaintiff unconscious, a find-
ing of negligence on the part of the defendant was warranted where
there was evidence that the defendant's transmission line had carried
electricity at 69,000 volts above the yard for many years, that the
greatest distance electricity from the transmission line would arc to an
object below would be one foot, and that the defendant knew that its
wires were between 27 and 32 years old, that the wires would wear out
"from use or being over 27 years old," that if strands of the wires broke
they would unravel, hang down and lengthen, and that electricity from
a hanging wire would arc to any machine within a foot, and conclusions
were justified that at the time the plaintiff was injured a broken strand
hung down from the live overhead wires to a point from which elec-
tricity arced to the conveyor, and that the hanging strand had been
broken for a period sufficiently long for the defendant to have observed
and remedied it.  [125]

An inculpatory statement made by an employee of an electric power com-
pany shortly after the occurrence of personal injuries by electricity
from a transmission line was properly excluded as an admission by the
company at the trial of an action by the injured person against it in
the absence of evidence or offer of proof as to the identity or position
or authority of the employee; nor was the statement admissible as part
of the res gestae.  [126]

Exceptions taken at the trial of an action to the exclusion of hypothetical
questions to an expert witness, followed by offers of proof, were treated
by this court as waived where the only treatment given to the exceptions
in the excepting party's brief was the repetition of the questions and
the offers of proof coupled with references to the pages in the record
which related to the facts assumed in the questions.  [126-127]

TORT.   Writ in the Superior Court dated July 5, 1966.

The action was tried before *Good, J.*

*Joseph M. Cohen* for the plaintiff.

*Francis H. George* for the defendant.

QUIRICO, J. This is an action in tort for negligence in which the plaintiff seeks recovery for personal injuries sustained by him when electricity from a transmission line of the defendant entered a machine on which the plaintiff was working and passed through the machine to the ground. The case is before us on the plaintiff's exceptions to the allowance of the defendant's motion for a directed verdict, and to the exclusion of evidence offered by the plaintiff.

We summarize the evidence in its aspect most favorable to the plaintiff to determine whether it was sufficient to permit the case to be submitted to the jury. Applying that test, we omit whatever evidence tends to contradict that aspect, or to support the contentions of the defendant on disputed facts. The plaintiff was entitled to have the case decided by the jury "if anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *Kelly* v. *Railway Exp. Agency, Inc.* 315 Mass. 301, 302. *Adams* v. *Herbert,* 345 Mass. 588, 589.

The plaintiff was injured on September 30, 1965, while employed by the Granger Contracting Co., Inc. (Granger) in the repair and maintenance of its construction equipment at its yard in Millbury. On that date and for fifty-four years prior thereto the defendant owned and maintained an overhead electrical transmission line across the property. Granger purchased the yard in 1948. In that year the defendant, at Granger's expense, replaced the existing poles with taller poles and raised the existing wires to a minimum height of thirty feet above the ground. The wires thus raised had been installed ten to fifteen years previously, and the same wires remained at the increased height to the time of the plaintiff's injury. No other work was done on those wires from 1948 to the date the plaintiff was injured. The line was patrolled "each week for visual inspection."

The transmission line consisted of six wires carrying electricity at 69,000 volts. Each of the six wires was made up of seven strands of bare copper wire wound spirally along their lengths to form a cable type unit. Each of the seven strands was of 2/0 gauge size, or less than one-eighth of an inch in diameter.

On September 30, 1965, the plaintiff and his supervisor were attempting to repair a conveyor used to lift concrete to high elevations. The conveyor was located at a point in the yard under the power line. It had been placed there to be near the shop where the tools were kept and to be out of the way of trucks. The conveyor included a motor driven belt which ran on a metal beam forty feet long. When in proper working order, the front end of the beam could be raised to a maximum height of twenty-six feet above the ground. At that time, due to some mechanical problem, it could be raised to only nineteen feet and the repairs were intended to correct that condition. The plaintiff was working on the motor while his supervisor was at the controls trying to raise the front end of the conveyor. It went up to nineteen feet and stopped with its highest point about eleven feet below the defendant's wires.

With the machine stopped in that position, an electric current from the defendant's transmission line went down to and through the conveyor. It manifested itself in a yellow blue flash which started at the overhead wires and traveled in a downward direction. The supervisor saw and heard something which he described as "an explosion like a ball of fire and a crackling noise" and also "as if something came down and formed into a ball." The supervisor was thrown against a warehouse fifteen or twenty feet away. The plaintiff was rendered unconscious in a kneeling position beside the machine. He had three burn marks on his feet with corresponding burn holes in his socks and shoes, and there were burn marks on his shirt and pants.

Immediately after the accident the highest point of the conveyor was nineteen feet above the ground. The incident caused one of the conveyor's tires to blow out, and

it caused burn marks about four or five feet from the top of the conveyor. There were also burned spots on the tow hitch and in other places on the left hand side to the rear of the conveyor, and small burned spots on the ground. These indicated the path of the current to the ground. At the spot where the current went into the ground "it was like rock," and "it looked like glass had melted."

About one-half hour after the accident the defendant's superintendent of transmission arrived at the yard and he looked at the wires in question with the aid of field glasses. He saw "a couple of strands, that were hanging or sticking out" about one inch, with evidence of electrical burn at that point. Farther along the same wire one strand was burned leaving a burned spot not more than one inch in size. The burned spots indicated to the superintendent that there had been some object between the spots and the ground. Three days thereafter the defendant "replaced approximately two feet of this conductor . . . because a string of the conductor was damaged."

The superintendent expressed the opinion that if a strand of the wire were broken for a while the wind might cause it to become a little longer, that the longer the piece of wire the more it would be subject to being blown, and that this process could go on for several days. He also testified that such wires "wear out from use or overload and from use or being over 27 years old."

The plaintiff called as his witness a registered professional engineer who qualified as an expert in the electrical field. He testified in part as to what he observed when he visited the yard about two years after the accident and in part in answer to hypothetical questions. He defined the word "arcing" as the discharge of electricity through a wire from one conductor to another. He in turn defined the word "conductor," sometimes also called a "leader," as any piece of metal although it is usually a piece of wire. In his opinion if the defendant's wires were thirty feet above ground and the highest point of the conveyor was nineteen feet above ground, electricity from the wires could not arc

to the conveyor. The greatest distance that electricity from the high tension wire could arc to an object below would be one foot, and it would be less than that under certain variations in voltage. It was his opinion that electricity from the defendant's wires arced to the conveyor through a piece of wire hanging from the defendant's wires and going down to within a foot of the conveyor. There was no way the electricity from the defendant's wires could enter the conveyor eleven feet below the wires unless there was a hanging wire spanning that distance to within a foot of the conveyor. If the conveyor and such a hanging wire came within a foot or less of each other for a fraction of a second, the electricity would arc to the conveyor. The hanging wire acting as such a conductor could be of any size, even as small as a piano wire.

It is apparent from the foregoing summary that there was no evidence of any specific negligent act or omission by the defendant causing the injuries for which the plaintiff seeks recovery. The plaintiff argues that the case should have been submitted to the jury under the doctrine of res ipsa loquitur. "In recent years this court has tended to avoid the use of the Latin phrase even while applying the principles included within it by the common understanding. . . . This has been done in order to avoid the confusion and 'mass of verbiage' built up around the expression." *Evangelio* v. *Metropolitan Bottling Co. Inc.* 339 Mass. 177, 179–180, and cases and other authorities cited therein.

Stated without resort to the confusing Latin phrase, the issue is whether the evidence, considered in its entirety and in its light most favorable to the plaintiff, was sufficient to permit the jury as the trier of facts to infer that some negligent act or omission by the defendant caused the injuries sustained by the plaintiff. The test is not whether the evidence was such that it required the jury to infer negligence by the defendant, but only whether it was sufficient to permit such an inference. *Roscigno* v. *Colonial Beacon Oil Co.* 294 Mass. 234. We conclude that it was sufficient for that purpose.

The defendant owed the plaintiff the duty to exercise ordinary prudence and care in the maintenance and use of its power line. The determination of what the words "ordinary prudence and care" require must be made on the basis of the facts of each case. "Care and diligence should always vary according to the exigencies which require vigilance and attention, conforming in amount and degree to the particular circumstances under which they are to be exerted. But it must be equal to the occasion on which it is to be used, and is always to be judged of . . . 'according to the subject matter, the force and danger of the material under the defendants' charge, and the circumstances of the case.'" *Holly* v. *Boston Gas Light Co.* 8 Gray, 123, 131. *Hutchinson* v. *Boston Gas Light Co.* 122 Mass. 219, 222. That rule which was originally applied to gas cases was later held applicable to electricity cases. *Uggla* v. *West End St. Ry.* 160 Mass. 351, 354. Our decisions have long recognized that the dangers inherent in electricity have a bearing on the degree of care required in its use. In *O'Donnell* v. *Boston Elev. Ry.* 205 Mass. 200, 202, we said: "We all know that electricity is a highly dangerous servant, and the defendant employing that dangerous servant for its own purposes is properly held to a correspondingly high degree of care in its use." In *Edgarton* v. *H. P. Welch Co.* 321 Mass. 603, 610, we said that the power company "was required to exercise care that was reasonable in the circumstances. But inasmuch as electricity is a highly dangerous force, those employing it are properly held to a correspondingly high degree of care in its use." In *Clough* v. *New England Tel. & Tel. Co.* 342 Mass. 31, 35, we varied that only to conclude that the electric company is "held to exercise care that is commensurate with the risk." These statements were repeated in *Rasmussen* v. *Fitchburg Gas & Elec. Light Co.* 343 Mass. 515, 517. Restatement 2d: Torts, §§ 289–294. See *Hathaway* v. *Checker Taxi Co.* 321 Mass. 406, 411–412; *Kane* v. *Fields Corner Grille, Inc.* 341 Mass. 640, 642–643, and cases cited.

On the date of the plaintiff's injury and for some years

prior thereto the defendant transmitted electricity at 69,000 volts through the line above the Granger yard. It knew the use which was being made of the yard. In 1948 it had raised its line to a minimum of thirty feet above the ground over the yard and required Granger to pay for that work. It can be inferred that this was done to reduce the risk of any of Granger's equipment coming in contact with the wires overhead. The defendant was chargeable with full knowledge of the great likelihood that if the electricity which it was transmitting at 69,000 volts were conducted to any Granger machine it would cause serious injury to any person working on that machine. It knew that the wires of its line at that point were between twenty-seven and thirty-two years old in 1965 and that they could wear out "from use or overload and from use or being over 27 years old." It knew that if any strands of the multi-strand wires broke the broken ends would unravel, hang down from the rest of the wire, and grow longer from the effects of wind and the passage of time. It is chargeable with knowledge that if such a hanging wire or any other wire hanging from its live wires came within a foot or less of any Granger machine the electricity from its line would arc to, and enter, the machine.

On all the evidence the jury could properly conclude that at the time the plaintiff was injured there was a broken strand hanging from one of the defendant's live overhead wires, and that the strand hung down to a point where electricity from its point nearest to the conveyor on which the plaintiff was working arced to the conveyor and caused the plaintiff's injuries. The jury could also properly conclude that by reason of the length of that hanging broken strand it had been broken for a sufficiently long period to have been observed or discovered and remedied by the defendant before the plaintiff was injured. The jury were warranted in inferring that the defendant was guilty of negligence causing the plaintiff's injuries. The defendant's motion for a directed verdict in its favor should have been denied.

We now consider the several exceptions taken by the plaintiff to the exclusion of questions put to his witnesses. In each case the plaintiff made an offer of proof after the question was excluded.

1. Shortly after the plaintiff was injured three men employed by the defendant arrived at the Granger yard and spoke to the plaintiff's supervisor. The plaintiff offered to prove that one of the three men "stated that they obtained a permit to fix that wire, and they were going to fix it that coming Sunday." There was no evidence or offer of proof as to the identity of the man or as to his position or authority as an employee of the defendant. The question was properly excluded. *Cleary* v. *First Natl. Stores Inc.* 291 Mass. 172, 174. *Stewart* v. *Worcester Gas Light Co.* 341 Mass. 425, 436–438. The plaintiff's contention that the evidence was admissible as part of the res gestae is without merit. *Rankin* v. *Brockton Pub. Mkt. Inc.* 257 Mass. 6, 10–11. *Rocco* v. *Boston-Leader, Inc.* 340 Mass. 195, 196–197.

2. The plaintiff excepted to the exclusion of two hypothetical questions put to his electrical expert. Each question asked the witness to assume certain facts and then to answer whether a wire was "in a safe condition" and "in a safe operating condition."[1] The offers of proof were that the answers to both questions would be that the wire was not in a safe operating condition. The only treatment given to these two exceptions by the plaintiff in his brief is the repetition of the questions and the offers of proof coupled with references to the pages in the record which related to the facts assumed in the questions. This treatment of the

[1] The questions excluded and the offers of proof were as follows:

"Mr. Kimball, if a strand of wire which was hanging from the overhead wire at that time this incident occurred, would that overhead wire be in a safe condition?" Offer of proof: "that the answer would be, 'No, it would not be in a safe operating condition.'"

"[I]n the event that electricity arced from the overhead wires at the time in question from the height of approximately 30 feet above ground and to a point below it that was below its normal arcing range and there was no explanation for that arcing, would you have an opinion as to whether or not that overhead wire at that time was in a safe operating condition?" Offer of proof: "that the witness's opinion would be 'that the overhead wire at that time was not in a safe operating condition.'"

exceptions does not constitute argument, and it furnishes this court no help in reaching any decision thereon. Supreme Judicial Court Rule 1:13, 351 Mass. 738, provides that "[t]he court need not pass upon questions or issues not argued in briefs." We treat these two exceptions as waived by the plaintiff for failure to argue them in his brief. *Lolos* v. *Berlin*, 338 Mass. 10, 13–14. *Commonwealth* v. *Martin*, 358 Mass. 282, 290.

The plaintiff's exception to the allowance of the defendant's motion for a directed verdict is sustained. The plaintiff's exception to the exclusion of the question relating to statements made by an employee of the defendant is overruled. The plaintiff's remaining exceptions are treated as waived.

*So ordered.*