Hillsborough
No. 6405

LINDA ABBOTT WOOD, ADMINISTRATRIX

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE

March 29, 1974

*Leonard & Harkaway* and *William J. Groff (Mr. Groff* orally) for the plaintiff.

*Sulloway, Hollis, Godfrey & Soden* and *Michael M. Lonergan (Mr. Lonergan* orally) for the defendant.

LAMPRON, J. Wrongful death action brought by the ad-

ministratrix of the estate of James C. Abbott who was electrocuted on September 23, 1967, when a 40-foot extension aluminum ladder he was using at a "painting bee" at the home of Joseph and Margaret Fuller in Londonderry was in contact with a 7200-volt power line of the defendant, Public Service Company. This action together with a similar one against the Fullers (not involved in this transfer) were tried before a jury following a view. The jury disagreed in both cases and a mistrial was declared by *Flynn,* J. The company's exceptions to the denial of its motions for nonsuit and directed verdict and plaintiff's exception to the granting of defendant's motion to dismiss her count in strict liability were reserved and transferred in advance of further proceedings.

The main issues presented are (1) whether there was sufficient evidence to submit to the jury the issue of the company's causal negligence particularly because of a lack of expert testimony on the standard of care to be observed by it, and (2) whether the doctrine of strict liability in tort is applicable in these circumstances.

The Fuller house faced on the north side of Griffin Avenue which runs westerly from Griffin Road. There were two other houses on the same side, one about 800 feet easterly of it at the corner of Griffin Road, the other westerly at the end of Griffin Avenue. On the south side there was a house on the corner of Griffin Road, a small ice house directly across from the Fuller home and another house at the end of Griffin Avenue.

The power line in question was strung along Griffin Avenue on four poles. The first was on its south side near the corner of Griffin Road. The line then crossed to a second pole on the north side and went to a third pole next to the Fuller driveway and to a fourth pole to the west. All of these poles were located in the public right of way except the third pole which was located on the Fuller property some eight feet north of the public way. Between poles three and four the line ran about nine feet from the front of the Fuller house at a height of about twenty-three feet seven inches above the ground. It carried 7200 volts, an increase from the former 2400 volts, and had been weatherproofed but was not insulated.

The deceased, James Abbott, was given the task of painting the louvers and coping along the front of the house about thirty feet above ground. He was using a 40-foot aluminum extension ladder which was above the power line. He painted without incident during the morning moving the ladder several times with the assistance of John Ferguson who was also painting the front of the house. Ferguson testified, however, that he believed one person could move the ladder and that he probably would have moved it by himself. After lunch, Abbott, Ferguson, and Mooney who also had been painting the front of the house resumed their work. About fifteen minutes later Ferguson saw Abbott descending from his ladder and shortly thereafter he heard a sharp metallic sound and turning his head he saw Abbott in a frozen position holding the ladder which was in contact with the 7200-volt power line. Thereafter both Abbott and the ladder fell to the ground. He was given mouth to mouth resuscitation to no avail.

A company engaged in the distribution of electric current is bound to exercise due care in the construction and maintenance of its lines. The test of due care is what reasonable prudence would require under the circumstances. *Fitzpatrick v. Company*, 101 N.H. 35, 37, 131 A.2d 634, 637 (1957); *Gelinas v. New England Power Co.*, 359 Mass. 119, 268 N.E.2d 336, 339 (1971); 26 Am. Jur. 2d *Electricity, Gas, And Steam* § 39 (1966). This imposes on the company the duty to use proper care to protect others while in the lawful exercise of their rights. *Lawler v. General Elec. Co.*, 294 N.E.2d 535 (Mass. 1973).

Among the circumstances to be considered in establishing the standard of care to be exercised by the company are: the amount of voltage carried in the line; insulation or lack of it; presence or absence of signs or notices warning of the line's dangerous character; its location with relation to adjacent buildings and height above the ground; the line's compliance or lack of compliance with recognized standards or codes for installation; the foreseeability that persons in their ordinary and lawful activities might suffer injury or death from contact therewith. *Black v. Public Serv. Elec. and Gas Co.*, 56 N.J. 63, 265 A.2d 129 (1970);

*Lawler v. General Elec. Co.,* 294 N.E.2d 535 (Mass. 1973); Restatement (Second) of Torts § 435 (1965); *see McCaffrey v. Company,* 80 N.H. 45, 114 A. 395 (1921); Annot., 69 A.L.R.2d 9 (1960).

The company maintains that the resolution of these issues presented matters of extreme complexity which required expert testimony to establish the standard of care to be exercised by the utility and to determine whether its negligence caused the death of James Abbott. If the issues involved the physics of electricity or one of its particular characteristics, that of arcing, by which under certain conditions a specified current will jump some distance and injure or kill someone who has not come in contact with the line itself, we would agree with defendant's contention. *See Marcotte v. Peirce Constr. Co.,* 111 N.H. 226, 229, 280 A.2d 105, 108 (1971); *Morton's Adm'r v. Kentucky Tennessee Light & Power Co.,* 282 Ky. 174, 178, 138 S.W.2d 345, 348 (1940). In those instances these scientific issues would be beyond the capacity of men of common experience and knowledge to form a valid judgment by themselves and expert evidence would be required to assist the jury in its decision. *Burt v. Aetna Cas. & Sur. Co.,* 112 N.H. 29, 31, 290 A.2d 49, 50-51 (1972); *Blecatsis v. Manchester Gas Co.,* 103 N.H. 542, 543, 176 A.2d 711, 712 (1961); *Jones v. Tucker,* 41 N.H. 546, 547 (1860); 2 F. Harper and F. James, Law of Torts § 17:1, at 966 (1956).

The issues in this case were not of such an esoteric nature. They involved the proper location of a power line carrying 7200 volts and the care to be exercised to prevent injury to persons lawfully within its vicinity. That this line carried a deadly current cannot be denied and its voltage had a bearing on the care required by the company to prevent injury. *Black v. Public Serv. Elec. & Gas. Co.,* 56 N.J. 63, 72, 265 A.2d 129, 133 (1970); 26 Am. Jur. 2d *Electricity, Gas, And Steam* § 42 (1966). This is also true of the fact that the line was not insulated. *Henderson v. Kansas Power & Light Co.,* 184 Kan. 691, 698, 339 P.2d 702, 708 (1959). An engineer employed by the company for eleven years in the planning of systems of distribution of electricity testified that in certain instances a 7200-volt line had been designed with an

insulated wire. He further testified that it would have been feasible to do so in this instance at a cost of $300 to $400. It was for the jury to determine whether in the circumstances of this case the expense of insulation was necessary to prevent injury by contact with this wire. *Brillhart v. Edison Light & Power Co.*, 368 Pa. 307, 312, 82 A.2d 44, 47 (1951); *see McCaffrey v. Company*, 80 N.H. 45, 46, 114 A. 395 (1921).

There was evidence that pole No. 3 formerly located in the public way had been relocated onto the Fuller property eight to twelve feet nearer to the house. This brought the power line at that location about nine feet from that part of the house where the deceased was painting at the time of the accident. The proximity of this wire to the Fuller house and the foreseeability that persons lawfully in its vicinity might come in contact with it were elements to be considered by the jury in determining whether the company was exercising due care. *Fitzpatrick v. Company*, 101 N.H. 35, 131 A.2d 634 (1957); 26 Am. Jur. 2d *Electricity, Gas, And Steam* § 122, at 334 (1966). The company engineer and its district line supervisor testified that this line met or exceeded the standards prescribed in safety code regulations or followed in customary practices. This is not conclusive proof that the company is free from liability. It was for the jury to draw its own conclusions from all the evidence as to what minimum clearance reasonable prudence required under the circumstances. *White Mountain Power Co. v. Whitaker*, 106 N.H. 436, 440, 213 A.2d 800, 803 (1965). Its view of the premises could be a valuable aid in its determination of this issue. *Wright v. Connecticut River Electric Co.*, 106 N.H. 113, 116, 206 A.2d 103, 105 (1964).

The company employees also testified in regard to the need, effectiveness, and cost of placing signs on these poles warning of the high voltage of the line. There is no evidence that the victim knew its voltage. It was for the jury to decide whether under the circumstances the company should have anticipated that a person performing, as was the decedent, the not unusual task of painting the Fuller house with a ladder in the vicinity of its line might be placed in danger of coming in fatal contact with it if

reasonable precaution were not taken such as placing warning signs on the poles. *Gallas v. Public Serv. Elec. & Gas Co.,* 56 N.J. 101, 110, 265 A.2d 377, 381 (1970).

We hold that these issues dealing with the standard of care to be exercised by the company and whether negligence on its part caused the death of plaintiff's intestate were within the common experience and general observation of members of the jury and could be resolved on the evidence presented. *Christian v. Elden,* 107 N.H. 229, 231, 221 A.2d 784, 787 (1966); *cf. Burt v. Aetna Cas. & Sur. Co.,* 112 N.H. 29, 290 A.2d 49 (1972). We further hold that there was sufficient evidence to submit to the jury whether negligence on the part of the company caused the death of plaintiff's intestate. *Fitzpatrick v. Company,* 101 N.H. 35, 131 A.2d 634 (1957); *Gelinas v. New England Power Co.,* 359 Mass. 119, 268 N.E.2d 336 (1971). Defendant's motions for nonsuit and directed verdict were properly denied.

Plaintiff excepted to the dismissal by the trial court of her count in strict liability. This court has adopted the doctrine of strict liability for injuries caused by defective products of manufacturers or sellers. *Buttrick v. Lessard,* 110 N.H. 36, 260 A.2d 111 (1969). This does not make these defendants insurers nor does it impose absolute liability on them. The plaintiff must still prove that the injury resulted from unsuitableness or defect in the product. *Elliott v. Lachance,* 109 N.H. 481, 484-85, 256 A.2d 153, 156 (1969); *McLaughlin v. Sears, Roebuck,* 111 N.H. 265, 281 A.2d 587 (1971).

Although the generating and distribution of electricity has been held a dangerous activity, electric companies have not been held strictly or absolutely liable for injuries suffered from contact with its power lines. *Eastern Shore Pub. Serv. Co. v. Corbett,* 227 Md. 411, 425, 177 A.2d 701, 709 (1962); 26 Am Jur. 2d *Electricity, Gas, And Steam* § 39 (1966); *see* Annot., 69 A.L.R.2d 9, 15 (1960).

This jurisdiction has not been prone to extend strict liability unless urgent considerations so require. The multiple difficulties encountered in obtaining relief under warranty provisions was considered sufficient reason to apply strict liability in products cases. *Moulton v. Groveton*

*Papers Co.,* 112 N.H. 50, 53, 289 A.2d 68, 72 (1972). This court has recently refused to extend strict liability to owners of dams in disrepair (*Moulton v. Groveton Papers Co. supra*) or to an insurer who has failed to settle a case within its policy limits. *Dumas v. State Mut. Auto Ins. Co.,* 111 N.H. 43, 274 A.2d 781 (1971). No compelling reason of policy or logic has been advanced to apply strict liability to electric companies. We hold that the trial court properly dismissed plaintiff's count seeking recovery on that ground.

*Remanded.*

All concurred.