JUDITH BAGLEY

v.

CONTROLLED ENVIRONMENT CORPORATION

January 6, 1986

*Daschbach & Kelly P.A.*, of Lebanon (*Joseph F. Daschbach* and *Deborah J. Cooper* on the brief, and *Mr. Daschbach* orally), for the plaintiff.

*Bell, Falk & Norton P.A.*, of Keene (*Arnold R. Falk* and *Mary Louise Caffrey* on the brief, and *Ms. Caffrey* orally), for Controlled Environment Corporation.

SOUTER, J.   This is an action for damages resulting from contamination of the plaintiff's soil and groundwater, allegedly caused by the defendant's release of chemicals on neighboring land. The plaintiff appeals an order of the Superior Court (*Contas*, J.) dismissing counts pleading strict liability and statutory violation. We reverse with respect to the count claiming a violation of RSA chapter 147-A (Supp. 1983), which regulates the disposal of hazardous waste, but otherwise affirm.

In reviewing an order granting a motion to dismiss, we, like the trial court, must regard as true all properly pleaded facts and all inferences that may be drawn from them in the plaintiff's favor. *Weld Power Industries v. C.S.I. Technologies*, 124 N.H. 121, 123, 467 A.2d 568, 569 (1983). We, therefore, take the following allegations as true for purposes of this appeal.

The defendant, Controlled Environment Corporation, is the owner and developer of a planned residential community in Grantham

known as Eastman Development. Eastman Community Association is a separate corporation concerned with the recreational activities of residents of the community. At various relevant times the defendant and the Association have owned land near the boundary of Eastman Development, including the site of a maintenance garage and storage tank, from which gasoline has leaked into the soil and groundwater. At the same place, the defendant and the Association have dumped oil, grease and other waste materials generated in the course of developing the property and constructing and maintaining its golf course, and this material has also entered the groundwater. Some of the gasoline and waste materials have passed beyond the boundaries of Eastman Development, contaminating the plaintiff's nearby property and causing her personal injury.

The plaintiff brought a damage action in several counts, pleading trespass, negligence, nuisance, strict liability, and civil liability predicated on violations of RSA chapters 146-A (1977 and Supp. 1983), 147-A (Supp. 1983) and 106-A (1977 and Supp. 1983). Originally the action named the Association as a co-defendant, but the superior court later granted the plaintiff's motion to dismiss the action as against the Association. The plaintiff then brought a separate action against the Association, which is not involved in this appeal.

The defendant moved to dismiss the counts in trespass, strict liability and statutory violation, for failure to state claims on which relief might be granted. The trial court denied the motion as to the trespass count and as to any violation of RSA 146-A:10, which provides enhanced damages for any negligent or intentional spill or discharge of oil, including gasoline. *See* RSA 146-A:2, I. The court dismissed the other statutory counts, however, and the count in strict liability.

In this appeal, the plaintiff did not brief or argue her exception to the partial dismissal of the claim under RSA chapter 146-A (1977 and Supp. 1983), relating to the discharge or spillage of oil, including gasoline. That issue is therefore waived. *Woodman v. Perrin*, 124 N.H. 545, 550, 474 A.2d 999, 1002 (1984). The remaining issues are whether the court erred in dismissing the other statutory counts and the count in strict liability.

We consider the claim of strict liability first. Legal liability is said to be strict when it is imposed even though the defendant has committed no legal fault consisting of the violation of a common law or statutory duty. *Moulton v. Groveton Papers Co.*, 112 N.H. 50, 52, 289 A.2d 68, 71 (1972). Apart from liability for trespass by animals, *see King v. Association*, 100 N.H. 212, 123 A.2d 151 (1956); RSA

466:19, strict liability for damages has traditionally met with disfavor in this jurisdiction. This court used *Brown v. Collins*, 53 N.H. 442 (1873), for example, to reject the doctrine of *Rylands v. Fletcher*, (1868) L.R. 3 H.L. 330, that an occupier of land who brings and keeps upon it anything not naturally there, and likely to cause damage if it escapes, is liable in damages for all the direct consequences of such an escape, even if he is wholly free of negligence. *See* SALMOND ON TORTS 574, 579 (R.F.V. Heuston 13th ed. 1961). *See also Moulton v. Groveton Papers Co., supra* at 53, 289 A.2d at 71. This reluctance to impose strict liability has endured, and in 1956 Chief Justice Kenison wrote that "the cases in this state definitely indicate a clear tendency to limit strict liability to those cases where the Legislature has provided for it (*State v. Railroad*, 99 N.H. 66) or to those situations where the common law of the state has imposed such liability and the Legislature has not seen fit to change it." *King v. Association, supra* at 216, 123 A.2d at 155.

Since 1956 this court has recognized only one cause of action for damages based on strict liability, that being for the benefit of the user or consumer of an unreasonably dangerous and defective product. *See Buttrick v. Lessard*, 110 N.H. 36, 260 A.2d 111 (1969); RESTATEMENT (SECOND) OF TORTS § 402-A (1965). *Buttrick* stands alone, however, and later cases have declined to extend a cause of action in strict liability to purchasers of services, *e.g.*, *Siciliano v. Capitol City Shows, Inc.*, 124 N.H. 719, 730, 475 A.2d 19, 25 (1984), or to plaintiffs lacking any commerical relationship with the defendant, *Wood v. Public Service Co.*, 114 N.H. 182, 188–89, 317 A.2d 576, 579–80 (1974).

The plaintiff submits that these recent cases do not control our response to her argument that we should impose strict liability for the harm she alleges, an argument that rests on the policy underlying sections 519 and 520 of the Restatement (Second) of Torts (1977). Section 519 would impose strict liability where "an abnormally dangerous activity" actually results in the harm threatened by the abnormally dangerous character of the activity. Section 520 lists several factors to be considered in determining whether an activity is abnormally dangerous: the degree of risk, the seriousness of likely harm, the ability to eliminate the risk by due care, and the frequency, appropriateness and utility of the activity.

In one limited respect, the plaintiff is correct in pointing out that the reasoning of our post-*Buttrick* cases has been directed to a conceptual basis for asserting strict liability that is different from the position that the plaintiff now urges us to accept. One of the essential elements of strict liability in products cases under *Buttrick* is the product's unreasonable dangerousness, defined as a degree of

dangerousness beyond what the ordinary purchaser would contemplate. RESTATEMENT (SECOND) OF TORTS § 402-A comment i (1965). In contrast, the strict liability for which the plaintiff now argues in this non-products case would rest on a finding of abnormal dangerousness, identified by reference to the factors noted above. *See also* RESTATEMENT (SECOND) OF TORTS § 520 comment f (1977). The concept of the abnormally dangerous is apparently different from the concept of the unreasonably dangerous, and if we were to confine our analysis solely to these abstract concepts, the cases coming after *Buttrick* would not necessarily bar the theory of recovery asserted here.

Another aspect of *Buttrick* and the post-*Buttrick* cases, however, does stand in the plaintiff's way. This court in *Buttrick* did not find the unreasonable dangerousness of the defective product to be a sufficient reason, standing alone, for imposing strict liability. What was crucial in this court's policy analysis was the recognition that the need to establish traditional legal fault in certain products liability cases had proven to be, and would continue to be, a practically impossible burden. *See Buttrick*, 110 N.H. at 39, 260 A.2d at 113. This was the "compelling reason of policy," *see Wood*, 114 N.H. at 189, 317 A.2d at 579–80, without which *Buttrick* would have gone the other way. We have heard no reason to abandon our emphasis upon that compelling reason solely because we are dealing with a claim of abnormally dangerous activity.

Indeed, a number of post-*Buttrick* cases implicitly reject the position that abnormal danger is a sufficient reason, standing alone, to call for the imposition of strict liability. Good arguments could have been made for the existence of abnormal danger in the operation of the amusement ride in *Siciliano*, the maintenance of the high voltage power line in *Wood* and, probably, the maintenance of the dam in *Moulton*. We nonetheless refused to extend strict liability to cover the claims of the plaintiffs in each of those cases, and we held in effect that the abnormally dangerous nature of the activity could be addressed adequately either in determining the precaution that reasonable care would demand, or in requiring conformance to statutory mandates.

■ We follow those cases today and decline to impose strict liability in the absence of any demonstration that the requirement to prove legal fault acts as a practical barrier to otherwise meritorious claims. With respect to the dumping of the waste products and the leakage of gasoline in this case, there is no apparent impossibility of proving negligence. Moreover, the latter part of this opinion affirms the availability of an action for the disposal of the waste material

predicated on a statutory violation of RSA chapter 147-A (Supp. 1983). (An action tied to RSA chapter 147-A (Supp. 1983) is not, however, apparently available for the leakage of gasoline, since that was not spent, discarded or abandoned material and, hence, was not waste within the definition of that statute. *See* RSA 147-A:2, XVIII (Supp. 1983). The plaintiff's decision not to pursue her appeal of the dismissal of the statutory count based on RSA chapter 146-A generally has removed the occasion to decide whether the unintentional or non-negligent discharge of gasoline would be a violation of that statute giving rise to private civil liability.) We should note also that the facts pleaded in this case present no problems of identifying the person who may have breached a duty, *see Buttrick v. Lessard*, 110 N.H. 36, 260 A.2d 111 (1969), or of tracing causation for harm to one among several defendants, each of whom breached a duty. *See* RESTATEMENT (SECOND) OF TORTS § 433-B(3) (1965); W. KEETON, D. DOBBS, R. KEETON & D. OWENS, PROSSER AND KEETON ON THE LAW OF TORTS § 41, at 270–72 (5th ed. 1984).

■■ While we therefore affirm the dismissal of the count in strict liability, it does not follow that the dangers of hazardous waste will have no particular recognition in the law of the State, because we do hold that the plaintiff has stated a cause of action predicated on a statutory violation. "It is well established law in this State that a causal violation of a statutory standard of conduct constitutes legal fault in the same manner as does the causal violation of a common-law standard of due care, that is, causal negligence. In both instances liability is imposed because of the existence of legal fault, that is, a departure from a required standard of conduct." *Moulton v. Groveton Papers Co.*, 112 N.H. 50, 52, 289 A.2d 68, 71 (1972) (citations omitted). A causal violation, as that term is used here, is a violation resulting in the damage that the statute was apparently intended to guard against. *See id.* at 52, 289 A.2d at 70–71.

■ Beginning with these basic rules, we believe that the trial court correctly dismissed the statutory violation count insofar as it was predicated on a violation of RSA chapter 106-A (1977 and Supp. 1983), but that it erred in dismissing the claim to the extent that it was based on a violation of RSA chapter 147-A (Supp. 1983). The arguably relevant portions of the first statute, RSA 106-A:17 to :23 (Supp. 1983), regulate the transportation of hazardous substances and hazardous waste. The apparent object of these provisions is promoting safe transportation of hazardous substances and waste. *See* Laws 1983, 393:1. The plaintiff's declaration does not, however, claim that any damage was caused during the defendant's transportation of any hazardous substance or waste, or as a result of the

manner in which the defendant transported it. The harm, rather, is said to have resulted from the disposal or leakage of substances once they reached the site near the plaintiff's property. Therefore, there is no allegation of causal violation of RSA chapter 106-A (Supp. 1983), and the trial judge correctly dismissed the claim.

■ Insofar as the count pleads a violation of RSA chapter 147-A (Supp. 1983), however, it rests on firmer footing. RSA 147-A:4, I (Supp. 1983) requires, *inter alia*, that any person "operating" a "hazardous waste facility" obtain a permit. An "operator" is "any person who . . . operates, or otherwise directs or controls activities at a facility." RSA 147-A:2, XI (Supp. 1983). A "facility" is "a location at which hazardous waste is subjected to . . . disposal." RSA 147-A:2, IV (Supp. 1983). "Waste" includes "spent, discarded or abandoned material." RSA 147-A:2, XVIII (Supp. 1983). "Hazardous waste" includes a "liquid . . . [w]hich, because of either quantity, concentration, or physical, chemical, or infectious characteristics may . . . [p]ose a present or potential threat to human health or the environment when improperly . . . disposed of." RSA 147-A:2, VII(a)(2) (Supp. 1983). Such an operator is obligated to conform to the standards set forth in RSA chapter 147-A (Supp. 1983) and in any rules adopted by the office of waste management, and to obey the terms and conditions of any permit issued to him. *See* RSA 147-A:9, :14, I, :16, :17, I (Supp. 1983).

Turning to the plaintiff's pleadings, the declaration charges that the defendant was an operator of a facility in the sense, at the least, that it disposed of a liquid that was hazardous waste by virtue of its threat to health. It is likewise clear that the declaration charges the defendant with causing contamination and injury by means of disposal of such waste.

The only further allegation necessary to state a claim for causal violation of the statute is the allegation of the violation itself. Although the declaration expressly charges a violation, it does so without specifying whether the violation consisted of a failure to obtain a permit, failure to abide by the terms of a permit or failure to conform to the substantive requirements of the statute or of agency rules. While the courts and parties can reasonably demand more specific pleading than this, under our traditional practice the remedy for undue generality at this stage of a case is normally an order requiring a more definite statement rather than an order of dismissal. We will, therefore, consider the three possible specifications mentioned above, to determine whether the express allegation of one or more of them would complete the statement of a cause of action and withstand a motion to dismiss.

■ Under the traditional rule, a claim that the defendant had violated a substantive standard imposed by statute or rule would, of course, state a cause of action. *Moulton* holds that a violation of a statutory "standard of conduct" is equivalent to a violation of the common law duty of care. *Moulton*, 112 N.H. at 52, 289 A.2d at 71.

■ It does not, however, follow from our holding in *Moulton* that the plaintiff would state a claim by alleging only that the defendant's causal violation of the statute consisted of a failure to obtain a necessary permit or a violation of its terms. We nonetheless hold that an allegation of either would be sufficient to state a cause of action. Two considerations lead us to this conclusion. The first is that the permit process itself will be the source of substantive standards. The statute and the rules do not purport to specify all of the circumstances in which the various sorts of hazardous waste should or should not be disposed, and it appears that the legislature regarded the permit process as an essential opportunity for developing standards necessary to protect against the dangers posed by hazardous waste. *See, e.g.*, RSA 147-A:5, I(b) (Supp. 1983) (permits shall be issued only to those with financial responsibility to ensure that "appropriate" measures will be taken to prevent damage to public health and safety and to the environment); N.H. ADMIN. RULES, He-P pt. 1905. The object of the permit process, therefore, is not merely to ensure that an operator will comply with the appropriate statutory or regulatory standards, but to provide the opportunity to devise detailed substantive disposal standards appropriate for the specific case, in light of the statutory objectives.

It follows that the conditions imposed by terms of such a permit should be accorded the same status as substantive standards contained in a statute or rule. It also follows that a failure to comply with, or refusal to submit to, the permit process could preclude the derivation of substantive standards adequate to protect the public. Therefore, such a failure or refusal should itself be treated as causal and as sufficient to establish liability.

The second consideration that supports our holding that the allegation of the causal violation of a permit or of the requirement to obtain a permit states a private cause of action rests by analogy on the provision for a public cause of action found in RSA chapter 147-A. RSA 147-A:9 (Supp. 1983) provides, *inter alia*, that an operator who disposes of hazardous waste "in violation of RSA 147-A or rules adopted or permits issued under RSA 147-A" shall be "strictly liable" for costs of containment, cleanup and removal of hazardous wastes, and that the attorney general may institute an action to recover these costs.

This is a provision for damages, not a provision for penalty, which is dealt with separately. *See* RSA 147-A:14, :16, :17 (Supp. 1983). The quoted language makes it clear that such public civil liability for damages is not limited to cases involving violations of substantive statutory or regulatory standards; the statute is explicit in providing that violation of a permit's terms may give rise to a public action for damages, and the further reference to "violation of RSA 147-A" can only mean that disposal without any permit may also be the basis of public liability. (We note in passing that this statute's reference to strict liability is not technically correct; liability is not imposed merely because the operator caused damage, but because he either failed to obtain, or to abide by the terms of, a permit.) Thus, the legislature has evidently assumed that the permit process itself lessens the risk of harm from the disposal of hazardous waste and has therefore provided that disposal without a permit is sufficient to establish legal fault for purposes of an action for damages. *See Johnson v. Railroad*, 83 N.H. 350, 143 A. 516 (1928) (overruled by Laws 1937, 69:1; *see Vassillion v. Sullivan*, 94 N.H. 97, 100, 47 A.2d 115, 118 (1946)).

▆▆▆ If such a cause of action is appropriate to compensate the general public for the cost of cleanup that it would otherwise bear in the interest of public health and safety, a similar cause of action is appropriate to compensate a private or property-owning plaintiff for the acute damage and injury that can result from unlicensed disposal. Since such a plaintiff, unlike the general public, can suffer personal injury and harm to property, the private right of action should provide compensation for these elements of damage in addition to recoupment of money actually expended on cleanup and containment.

The defendant responds to these conclusions with two arguments. First, it argues that RSA chapter 147-A (Supp. 1983) contains no indication of legislative intent to provide a private cause of action. The answer to this is simply that we do not hold that the legislature has provided a private cause of action. This court has recognized it, by following the long-standing rule enunciated in *Moulton* and by extending the scope of that rule as we have described above.

Second, the defendant argues that its conduct has not violated any substantive standard, because it did not dispose of any hazardous waste in sufficient quantity to violate any of the administrative rules issued by the office of waste management. This argument also fails. Since the declaration of the plaintiff's writ does not indicate the volume of substances that were disposed of, we cannot assume anything about that volume for purposes of this motion to dismiss.

Moreover, the defendant does not cite any provision of the statute that limits its application to facilities of a given size, or any provision of the agency's implementing regulations that limits the application of the statute or the regulations to those who dispose of more than some threshold quantity. *See* N.H. ADMIN. RULES, He-P pt. 1905.08(b). In any case, this is an issue that may be pursued in the trial court on remand, but not here.

In sum, we hold that the declaration states a cause of action based on the disposal of hazardous waste in violation of RSA chapter 147-A (Supp. 1983) in such a way as to cause harm to the plaintiff by contaminating her land or injuring her person. Such a violation may consist of disposal without a permit, disposal in violation of the terms of a permit or disposal in violation of a substantive requirement of statute or administrative rule. On remand the plaintiff may amend her pleadings to specify the nature of the violation.

*Affirmed in part; reversed in part; remanded.*

JOHNSON, J., did not sit; the others concurred.