Harvey L. Downing and Ruth M. Downing, Plaintiffs-Appellees, v. Rockford District Mutual Tornado Insurance Company, a Mutual Insurance Corporation, Defendant-Appellant.

Gen. No. 69–44.

Second District.

September 11, 1969.

Smith, Penniman and McGreevy, of Rockford, for appellant.

Eaton, Leemon and Rapp, of Mt. Carroll, for appellees.

PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the Court.

In April, 1964, the defendant insurance company sold a policy of insurance to the plaintiffs (which reference herein shall be to Harvey L. Downing only), insuring, among other things, a corncrib and elevator in the amount of $7,000 against direct loss and damage by windstorm, cyclone, tornado and hail. The crib and elevator were constructed by the plaintiff and consisted of a two-story wooden building placed on a concrete foundation.

Plaintiff testified that he leased certain bins on the upper floor of the crib and that 2,500 to 3,000 bushels of soybeans were placed there by the lessee; that the soybeans weighed from 75 to 90 tons; that on the night of January 24, 1967, there was a tornado in the vicinity of his property; that the following morning he went to the crib and discovered that the door would not shut because the building had been jarred out of plumb; that the studs along the inside of the walls were five inches out of plumb at the top; that the cupola on top of the building was twisted and that there was a hole in the roof. He also testified that he concluded he would have to put the building back in shape before using it the following fall; that he did not notify his insurance company and that he planned to have his son help him jack up the building and straighten it out.

Thereafter, for a period of twenty days, plaintiff did not notify his insurance company and took no action to jack up the building, straighten the studs, or remove any of the soybeans, despite the fact that the soybeans could have been removed in a period of several hours. On the evening of February 14, 1967, the corncrib collapsed. The next day the plaintiff called his insurance man and reported the loss.

The defendant declined to pay for the entire damage and this action followed. The case was heard before a jury and the undisputed, and only, evidence as to damage was that the plaintiff's loss was $7,342. The jury ren-

dered a verdict in favor of the plaintiff in the amount of $3,500 and he then made what he called a "motion for additure." That motion was allowed and the trial judge increased the damages to $7,000, entering judgment for that amount. The defendant filed a motion for a judgment notwithstanding the verdict but the motion was denied.

The issues raised on this appeal fall substantially into two categories. The first issue is whether or not the plaintiff breached the insurance contract, and the second issue is whether the trial court erred in granting the so-called "motion for additure." In our view the plaintiff did breach the insurance contract and the case should be reversed. Therefore, we do not reach the second issue.

The insurance policy in question provided, among other things: *"Requirements in case loss occurs:* The insured shall give immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order. . . ." *"Perils not included:* This Company shall not be liable for loss by fire or other perils insured against in this policy, caused, directly or indirectly, by . . . (i) neglect of the insured to use all reasonable means to save and preserve the property at and after loss, . . . ." *"Conditions suspending or restricting insurance:* Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured, . . . ." and ". . . No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with. . . ."

It is to be seen from the first paragraph quoted above that when a loss occurred the plaintiff had four duties. First, to give immediate written notice to the company;

342

second, to protect the property from further damage; third, to separate the damaged and undamaged property; and fourth, to put the property in the best possible order.

The plaintiff did not comply with any of these duties. It is stipulated that he did not notify the company for a period of twenty days and, indeed, he only notified them after a further and more substantial loss had occurred. He did not protect the property from further damage. He did not remove any of the soybeans from the damaged crib so that, in fact, he did not separate the damaged from the undamaged property and he did not put anything in the best possible order.

■ ■ We are faced with the fact that a jury heard all of the evidence and concluded that the plaintiff had been faithful to his contractual duties. The only evidence as to the element of damage was in the amount of $7,342, yet the jury verdict was for $3,500. There is really no basis for such a verdict other than the fact that the jury compromised liability and damage. The issue presented to this Court was well stated by the Supreme Court in the case of Pedrick v. Peoria & Eastern R. Co., 37 Ill 2d 494, 229 NE2d 504 (1967), when the Court said at pp 498–499:

> "In our judgment the controlling issue herein is the troublesome, though familiar, question as to the circumstances under which the trial judge may determine that the proof presents no factual question for the jury's consideration and that a verdict should be directed or judgment non obstante veredicto entered. While there is no unanimity as to the governing principles, it seems reasonably well settled that the same standards shall be applied in either case; and such is the law of this State."

The Court concluded, at p 510:

> "In our judgment verdicts ought to be directed and judgments n. o. v. entered only in those cases in

343

which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

We are naturally reluctant to interfere with the verdict of a jury and the decision of a trial court upholding that verdict. Still, when applying the foregoing rule to the evidence in this case, the result is clear and our duty requires us to reverse.

The contract between the parties clearly required the plaintiff to report the original loss to the defendant. In the early case of Knickerbocker Ins. Co. v. Gould, 80 Ill 388 (1875), the Supreme Court, at page 394, stated, ". . . But where there is no dispute in relation to the facts and circumstances bearing on the question of diligence in giving the notice, then the question may be regarded one of law for the court." There is no dispute as to the facts herein. The plaintiff suffered a loss and did not report it until a greater loss occurred. Twenty days intervened during which the plaintiff or the defendant could have taken steps to remove the soybeans, to repair the original loss and put the building in order. None of these things occurred. Indeed, the defendant could not act to bring about such occurrence, since it had no notice of the original loss, International Harvester Co. v. Continental Cas. Co., 33 Ill App2d 467, 472, 179 NE2d 833 (1962) ; Gallagher v. American Alliance Ins. Co. of New York, 220 Ill App 476, 478 (1921).

We do not have before us, and we do not decide, whether the requirement of "immediate written notice" means that the notice should have been instantaneous or that it would have been permissible if given two or three days after the original loss. We decide only that the delay of twenty days, and the fact that the notice was only given after a second and total loss, is not a notice in compliance with the policy in this case. Likewise, we do not decide whether defendant is required to show preju-

344

dice by the failure to give notice since prejudice obviously occurred.

The plaintiff's only explanation for failure to give notice is that he intended to make the repairs himself. This being his intent, it would still not have been inconsistent for him to notify the carrier nor would his intent operate as a unilateral modification of the insurance contract.

We conclude as a matter of law that the plaintiff has breached the terms of his insurance policy and that he is not, under the terms of that policy, entitled to recovery. The judgment is therefore reversed.

Judgment reversed.

DAVIS and SEIDENFELD, JJ., concur.