No. 84-108

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

GENERAL INSURANCE COMPANY OF AMERICA,

Plaintiff and Respondent,

-vs-

TOWN PUMP, INC., and BOZEMAN TOWN
PUMP, INC.,

Defendant and Appellant,

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

R. Lewis Brown, Jr. argued, Butte, Montana

For Respondent:

Wellcome & Frost; G. Page Wellcome argued, Bozeman,
Montana

Submitted: October 16, 1984

Decided: December 11, 1984

Filed: DEC 11 1984

*Ethel M. Harrison*

Clerk

Mr. Chief Justice Frank J. Haswell delivered the Opinion of the Court.

Town Pump appeals a decision of the Gallatin County District Court in which its insurer, General Insurance, was found liable for 50 percent of the covered damages resulting from a gasoline leak at one of its gas stations.

This is the fourth appeal concerning this gasoline leakage which occurred between 1973 and 1975. The facts of the matter are set forth in detail in our decision of Town Pump, Inc. v. Diteman (Mont. 1981), 622 P.2d 212, 38 St.Rep. 54 (hereinafter Diteman). While a second recitation of the factual circumstances is not necessary, a review of the litigation history will place the present controversy in perspective.

The first case in this litigation was a suit by several adjoining neighbors of the Bozeman Town Pump for damages resulting from gasoline contamination of their water wells. The construction company that installed the underground storage tanks and pipes was named as a joint defendant and alleged to be a joint-tortfeasor. The neighbors prevailed in the action, and we affirmed. See, Ferguson v. Town Pump, Inc. (1978), 177 Mont. 122, 580 P.2d 915 (hereinafter Ferguson). The plaintiffs successfully executed on Town Pump's bank account and secured the sum of $32,546.92.

In the second action, Town Pump sued the construction company for indemnity. On appeal we held there was sufficient evidence to support the jury's finding that Town Pump's own negligence precluded indemnity recovery. See, Diteman, supra. The storage tanks and pipes were installed in 1973, and Town Pump was aware of potential gasoline leakage as early as 1974. However, the company did not excavate the tanks until March 1975. From the time of installation to

2

that time when the tanks were uncovered, there was a continuous seepage of gasoline into the surrounding aquifer from a cross-threaded connection.

At this point, there was a settlement agreement whereby General Insurance, Town Pump's insurer and respondent in the present action, paid the original prevailing plaintiffs in Ferguson $12,837.16. Apparently, Diteman's insurer paid the same amount to the plaintiffs. The terms of this settlement are not before this Court, nor are they relevant to the appeal. What is significant is that the insured Town Pump contributed $32,546.92 and the insurer General contributed $12,837.16 toward the original damage award.

General represented Town Pump in these actions under a "non waiver agreement" whereby General reserved the right to deny coverage for the damages.

The third District Court suit was brought by General seeking a declaratory judgment that the gasoline leakage was not covered by its policy and that Town Pump therefore owed them $12,837.16 for damages previously paid the neighbors. Town Pump moved for change of venue and the trial court denied the motion. Town Pump's appeal of this order resulted in a third Supreme Court opinion, General Ins. Co. of America v. Town Pump, Inc. (1982), 196 Mont. 531, 640 P.2d 463. We affirmed the denial of venue change, and the proceeding remained in Gallatin County.

In this third action, with which we are concerned in this appeal, the parties filed cross-motions for summary judgment in the District Court. General argued that the pollution was not covered by its general liability policy. The policy provides an exclusion for damage caused by pollution. The exclusion includes an exception for "sudden, unexpected and unintentional" discharge of gasoline. Thus,

3

by the language of the policy, sudden, unexpected and unintentional discharges are covered. General argued before the District Court that the seepage was not sudden.

Judge Gary rejected these contentions and concluded that the gasoline leakage was sudden, unexpected and unintentional "as far as Town Pump was concerned." Although the court found the leakage "sudden" and arguably the damages were fully covered by the policy, the court apportioned liability equally between the parties.

The decision of the District Court was premised on the finding that the spillage continued for a period of two years (summer 1973 through March 1975) and Town Pump was negligent in failing to investigate and mitigate the damages during the second year. The finding of negligence was based on our prior Diteman opinion in which indemnity recovery against Diteman was denied due to Town Pump's negligence. The lower court concluded that the insurer General was liable on the policy for the first year of leakage and the negligent insured was liable for the second year of damages. Hence, damages were equally apportioned.

The lower court granted Town Pump "an excess judgment of $9,854.42 against the plaintiff [General]." Assuming this judgment was satisfied, Town Pump would have paid $22,692.50 ($32,546.92 previously paid minus $9,854.42 judgment received). General would have paid approximately the same amount or $22,691.58 ($12,837.16 previously paid plus $9,854.42 judgment paid).

Town Pump appeals the District Court judgment raising the following issues:

1. Did the District Court err by finding Town Pump negligent for failing to investigate and mitigate damages?

4

2. Did the District Court err when it failed to find the insurance policy completely covered the damages?

3. Were Town Pump's claims for punitive damages improperly dismissed?

Respondent General has facilitated appellate review in conceding that the pollution exclusion clause in the policy is not applicable to the gasoline leakage at issue. Counsel stated in his brief "that coverage under the policy is appropriate under the circumstances of this case." Counsel for the insurer further stated at oral argument that this was not a notice case involving allegations that the insured failed to properly give notice of the claim. Recognizing these positions of the insurer for purposes of our review, we accept that the pollution was sudden, unexpected and unintentional and that coverage was properly invoked by the insured.

I

General argues that the issue of Town Pump's negligence is governed by the principles of res judicata and collateral estoppel. It contends that the precise issue of whether Town Pump was negligent was decided in Diteman and that Judge Gary correctly relied upon this decision when he based his 50/50 liability apportionment on the premise that Town Pump breached a duty to investigate and mitigate damages. Although no legal support is offered, General proposes the following rule of law: If the insured is guilty of active negligence after the loss is or should have been discovered, then it participates in the loss and total coverage should not be afforded.

The District Court's judgment confirms that the foregoing analysis provides an attractive avenue for resolving this litigation. However, the principle does not withstand legal

5

scrutiny. We are unable to support the general proposition that an insured's continuing negligence cuts off coverage under a liability policy. Accordingly, the District Court's decision must be reversed.

Protection against liability for negligence is the principal purpose of liability policies like the one we are reviewing here. It is well established that mere negligence on the part of an insured will not defeat recovery on a policy. The insurer assumes the risk of negligence and recovery is permitted even though the negligence of the insured contributed to the loss. 18 Couch on Insurance 2d (Revised), § 74:639, 961-962 (1983).

The general rule was set forth in 1957 by the Second Circuit and remains sound law today: "Negligence, whether or not gross, but for which the accident would not have occurred will not serve as a defense" to a policy. New York, New Haven, and Hartford R. Co. v. Gray (2nd Cir. 1957), 240 F.2d 460, 464. The fact that this case construed a marine insurance policy does not diminish its import. The insured in Gray was loading steel reinforcing rods on railroad cars located on a barge in the Harlem River of New York Harbor when the barge began to list and take on water. The barge was needed the next day so despite the warnings the insured continued the loading operations. During the night, several cars broke their chains and rolled into the river, resulting in damage to the cargo and railroad cars. The federal court held that any negligence short of willful misconduct was no defense and the loss was insured.

There have been no allegations that Town Pump acted willfully in disregarding the indications of gasoline leakage. At most, the insurer has alleged there was a negligent failure to investigate and mitigate damages.

6

This case does not present a situation where an insured has acted negligently with respect to property that has been previously damaged in a separate occurrence. Were this the case, principles of mitigation of damages would be applicable. For instance, Couch on Insurance 2d states:

> "§ 74:645. Mitigation of damages.
> Distinct from negligence which leads or contributes to the occurrence of the harm is negligence in taking steps to remedy the harm which has been done. This postoccurrence concept is declared in the rule requiring the mitigation of damages, with the result that the fact that there is a loss does not affect the liability of the insurer therefor, but the fact that the loss could have been less had the insured or the plaintiff taken greater care after the loss was sustained will bar him from recovering for such excess which could have been so avoided." 18 Couch on Insurance 2d (Revised), § 74:645 (1983). (Emphasis supplied.)

The cases upon which this principle has been based can be placed into two broad categories, neither of which is a proper resting place for the case at bar.

The first category includes cases interpreting fire insurance policies. Typically in these cases the negligence of the insured in saving and preserving property damaged by fire is found to bar recovery for such damage. See, Franklin Fire Ins. Co. of Philadelphia, PA. v. Slaton (1938), 236 Ala. 565, 183 So. 865 (proper defense that insured failed to use all reasonable means to preserve property at and after fire); Delametter v. Home Ins. Co. (1939), 233 Mo.App. 645, 126 S.W.2d 262 (it is a duty of insured to use care to extinguish fire following collision of tractor-trailer); Maravas v. American Equitable Assur. Corporation (1927), 82 N.H. 533, 136 A. 364 (negligence of insured plaintiff was proper question for jury and where final destruction of cheese was not due to fire but negligence of plaintiff in failing to care for it after fire, plaintiff could not recover).

7

The second category of cases where mitigation of damages has played a role involves cooperation clauses within the insurance policy. These cooperation clauses expressly place an affirmative duty on the insured to prevent further damage to the property following a loss. For example, in Slay Warehousing Co., Inc. v. Reliance Ins. Co. (8th Cir. 1973), 471 F.2d 1364, the Eighth Circuit interpreted a clause that required the insured to take all reasonable means to protect, safeguard and salvage damaged property. The insured in Slay incurred certain expenses preventing damage to stored chemicals that were exposed to the elements when a warehouse roof and wall collapsed. The court held that the insured was entitled to its costs in protecting the property and noted that if the insured failed to protect the property, there was a strong possibility that its liability coverage would be forfeited altogether. See also, Downing v. Rockford Dist. Mutual Tornado Ins. Co. (1969), 112 Ill.App.2d 340, 250 N.E.2d 827 (plaintiff insured breached cooperation clause of tornado insurance when it did not notify insurer or move soybeans from storm-damaged corn crib that completely collapsed twenty days later); Chase Inv. Co. v. Mid-Western Casualty Co. (1942), 232 Iowa 73, 4 N.W.2d 863 (jury verdict for plaintiff insured upheld where injured truck driver acted reasonably following truck collision although the engine block in the abandoned vehicle later froze causing further damage).

General's blanket liability policy in this case contains no such cooperation clause. The policy only states that the insured shall cooperate with the company. Nor does this case present a situation analogous to a fire where the threatened harm is obvious and salvage of property is of immediate concern.

8

Town Pump's negligence in this case contributed to the ongoing occurrence of damage. Mere negligence will not defeat recovery on an insurance policy. In the absence of a cooperation clause or allegations of intentional wrongdoing, the benefits of such insurance should not be denied the insured. Town Pump is entitled to full coverage for its losses.

## II

Town Pump contends that its claim for punitive damages was improperly dismissed. It is argued that there were disputed issues of material fact on the question of whether General acted fraudulently and that summary judgment was therefore improper.

Appellant has failed to carry its burden of proof here. Town Pump has only made a bald assertion that General acted fraudulently and such does not raise a genuine issue of material fact. Conclusive or speculative statements are insufficient to raise a genuine issue of material fact. Fauerso v. Maronick Const. Co. (Mont. 1983), 661 P.2d 20, 40 St.Rep. 327.

The judgment of the District Court is reversed and the case remanded for entry of judgment consistent with this opinion.

_____
Chief Justice

9

We concur:

_____
John Conway Harrison

_____
Daniel J. Shea

_____

_____
L. C. Gulbrandson

_____
John C. Sheehy

_____
Frank B. Morrison
Justices